THE STATE OF IOWA, Appellee, v. A. E. KIDD, Appellant.

1. **Evidence**: OPINION: LEADING QUESTIONS. On the trial of an indictment for forgery in altering certain special findings in a civil action, in which the defendant herein was plaintiff, the clerk of the court having testified that he kept the findings behind a pile of blanks in a particular case, was asked: "Could anyone see them there, on looking at the case, without reaching around behind the blanks?" *held*, that the question called for a fact, and not for an opinion, and that it was not objectionable as leading.

2. ———: COMPETENCY: MATERIALITY. In such case, where it had been shown that the findings had been in the office of the defendant's attorney for a time, and that the defendant was there a part of that time, and had the findings in his hands one or more times, *held*, that a question to his attorney as to whether, during that time, he had been in the habit of watching what the defendant did, was neither incompetent nor immaterial.

3. ———: ———: ERROR WITHOUT PREJUDICE. The defendant's attorney having testified that the defendant was in full view the second time he was in his office, he was asked: "Did he make those erasures, or any of them, during that time—the second time?" *held*, that the question called for a fact and not an opinion, and that it was error to sustain an objection to it, made by the state, on the ground of incompetency and immateriality; but that the error was without prejudice to the defendant, as the witness was afterwards permitted to state all that the question called for.

4. **Criminal Law**: WITNESS NOT BEFORE GRAND JURY: EXAMINATION ON MOTION: ELECTION AND WAIVER BY DEFENDANT. When the prosecuting attorney has obtained leave, upon motion under section 4421 of the Code, to examine a witness who was not before the grand jury, and of whose evidence he has not given four days' notice, the defendant is entitled to elect whether he will take a continuance or go on with the trial, and where his counsel announces to the court: "Saving our exceptions to the rulings of the court, we will go on with the trial," he can not have the ruling reviewed upon appeal.

5. **Evidence**: PRIVILEGED COMMUNICATIONS: ATTORNEY AND CLIENT. Upon the trial of an indictment for forgery in altering the special findings in a civil action, it appeared that the defendant had sent to his attorney in a civil case a copy of the findings for a proper purpose; that he afterwards wrote to such attorney, requesting him to return the copy to him, to be shown to another person named; that the copy was returned accordingly, and that it was afterwards sent

back to the attorney, altered to correspond with the alterations in the original; and the attorney was required to testify to these matters, and to produce the documents, against his protest and the objection of the defendant that they were privileged communications. *Held*, that there being nothing in the defendant's letter of a confidential nature, it was not a privileged communication; that the special findings were part of the public records, and that, therefore, a true copy of them was not a privileged communication; and that, while the altered copy might be regarded as a confidential communication, it was not privileged, since the evident intent thereof was to deceive, not only the attorney, but the court also, and the rule is that professional communications are not privileged, when they are for an unlawful purpose, having for their object the commission of a crime.

6. **Forgery**: INTENT TO DEFRAUD: INSTRUCTIONS TO JURY. Upon the trial of an indictment for forgery in altering the special findings of the jury in a civil action, the defendant asked an instruction based upon the theory that there was no evidence of the existence of any person, partnership or corporation capable of being defrauded by the changes, but the evidence showed, beyond question, that the defendant was the plaintiff in the civil action, and that the alterations were intended to defraud the defendant in that action, and that that action had been begun and prosecuted to judgment against the defendant therein as a corporation. *Held*, that the defendant herein was estopped to question the corporate capacity of the opposite party in that action, and that the instruction was properly refused.

7. ———: DEGREES OF OFFENSE: ALTERING WRITTEN INSTRUMENT. The altering of a written instrument, so as to make it a different instrument, is the making of a new instrument, under section 3917 of the Code, defining the highest degree of forgery, and not the obliteration of an instrument, under section 3929, defining a lower degree of forgery.

8. **Trial in Criminal Cases**: REFERENCE TO DEFENDANT'S FAILURE TO TESTIFY. Where the defendant's attorney, in his opening remarks to the jury, on a trial for forgery, stated that, if the case went so far that the defendant's evidence would be introduced, they would show who the guilty parties were; and the prosecuting attorney, referring thereto in his closing argument, said, in substance: "If the defendant or his attorney knew who the guilty party was, why did they not come on and prove it? The fact that they did not do so shows guilt;" *held*, that these last remarks were not a violation of the statute which forbids the state to refer in argument to the fact that the defendant has failed to testify in his own behalf.

*Appeal from Clay District Court.*—HON. LOT THOMAS, Judge.

FRIDAY, OCTOBER 6, 1893.

THE defendant was indicted, tried, and convicted of the crime of forgery; and judgment that he be committed to the penitentiary for a term of three months, and that he pay costs, was entered against him. From this judgment, he appeals.—*Affirmed.*

*C. A. Irwin* and *A. W. Swett,* for appellant.

*John Y. Stone,* Attorney General, *Thos. A. Cheshire,* and *A. C. Parker,* for the State.

GIVEN, J.—The following is a sufficient statement of the facts for an understanding of the questions presented: The forgery charged is the altering of the sixth, seventh, twelfth and fifteenth special findings returned by the jury in a case wherein this defendant was plaintiff, and the American Pill & Medicine Company of Spencer, Iowa, was defendant. In that action this defendant sought to recover for services under an alleged contract of employment for a specified time, and damages for discharging him without cause before the expiration of the time. The defendant therein answered that the plaintiff, Kidd, without the knowledge of the defendant company, had induced it to enter into an illegal business, and, as manager of said corporation, he was conducting an illegal business; that he was incompetent, and discharged for said reasons. The plaintiff, Kidd, replied, denying these allegations. The sixth, seventh, twelfth and fifteenth special findings, as returned by the jury, were as follows:

"6. Was the defendant's business conducted as an illegal business? Yes.

"7. Was the defendant's business conducted in an illegal manner? Yes, in part.

"12. Was plaintiff incompetent in his management of the defendant's business? Yes.

"15. Do you find that De Luc's pills, as adver-
tised and sold, were so advertised and sold for an
illegal purpose? In part, they were."

The alterations charged, are, erasing the letters
"n" and "il" from the words "an" and "illegal," in
the sixth, seventh and fifteenth special findings, and
the letters "in" from the word "incompetent," in the
twelfth special finding. The evidence shows, without
conflict, that on January 28, 1892, Mr. Steele, one of
the attorneys for the plaintiff in the civil action, got
the papers in that case, including the special findings,
from the clerk, for the purpose of being used in sub-
mitting a motion for a new trial theretofore filed. Mr.
Steele took them to his office, where they were kept dur-
ing the day; the defendant Kidd being present part of
the time, and having the papers in his hands one or
more times. That evening, Mr. Steele, upon reading
the special findings, discovered the alterations alleged.
The evidence tends to show that the alterations had
not been made at the time Mr. Steele took the papers
to his office, and it is claimed, from the testimony of
Mr. Steele and others present, that the defendant could
not have made the alterations without being seen, and
that he was not seen to have done so. The claim on
behalf of the state is that the defendant did have
opportunities on that day to make the alterations with-
out being seen; that he did make them; and that to
prevent discovery, he wrote to his attorneys, to whom
he had furnished correct copies of the findings, to
return the copies to him, giving a false reason for so
requesting, the true reason being that he might make
the copies correspond with the findings as altered.
We first notice the appellant's complaints against cer-
tain rulings of the court in admitting and rejecting
testimony.

I. The clerk, having testified that he kept the
special findings behind a pile of blanks in a particular

case, was asked, "Could anyone see them there, on looking at the case, without reaching around behind the blanks?" Defendant objected as calling for an opinion, and leading. The cases cited in relation to opinions by experts are not in point. It did not require special skill or learning to answer this question. It called for a fact, and was not objectionably leading.

**1. EVIDENCE: opinion: leading questions.**

II. Mr. Steele, having testified to the defendant's being in his office on the twenty-eighth day of January, and several times on the days previous, was asked, "During this time, were you in the habit of watching to see what he did?" The defendant's objection, as incompetent and immaterial, was properly overruled. In view of the claims of the parties, it was very material to know how closely Mr. Steele observed the actions of the defendant while in that office on the twenty-eighth of January, and Mr. Steele was surely a competent witness by whom to prove the fact.

**2. ——: competency: materiality.**

III. Mr. Steele was asked by the defendant, "Well, during the second time that he was there, did he make these alterations?" The plaintiff objected as incompetent and immaterial. The objection was sustained, "so far as he has testified that he was not in his sight." Mr. Steele then stated that the defendant was in his view the entire second time that he was in the office. He was then asked, "Did he make those erasures, or any of them, during that time, the second time?" The plaintiff objected as above, and the objection was sustained. The objection should have been overruled. If the defendant was in view of the witness all the time, so that he must have seen him alter the papers, if he did so, then the question called for a fact, and not an opinion. The ruling was without prejudice, however, as Mr. Steele afterwards stated, without objection, that the defendant

**3. ——: ——: error without prejudice.**

was where he could observe him all the time, and that
he did not see him make any alterations in the papers,
and that he did not see him have pen or pencil, using
it on the papers, and that he would have seen it had
he done so.

The defendant offered in evidence a letter, exhibit
5, from his attorney, Mr. Morling, to him, to which
the plaintiff objected as irrelevant and immaterial.
The objection was sustained as to a part of the letter.
The parts excluded are clearly irrelevant and immate-
rial.

IV.   The county attorney caused notice to be
served, in due time, that the state would examine

**4. CRIMINAL law: witness not before grand jury: examination on motion: election and waiver by defendant.**

George E. Clark, Esq., as a witness. By
inadvertence, his residence was stated to
be Spencer, instead of Algona; and when
the witness was called, and stated that his
residence was Algona, the defendant ob-
jected to his being examined, upon the ground that no
sufficient notice had been given.   The objection was
sustained, and thereupon the county attorney filed a
motion and affidavit for leave to introduce the evidence
of Mr. Clark.   The defendant objected to the motion
upon several grounds, among which are these: That the
county attorney learned that said evidence could be
obtained in time to have given four days' notice of its
introduction, and that there was no showing of dili-
gence.   The application was sustained, "and leave
granted to the defendant, of course, to take a contin-
uance of the case, under the statute, or permit the wit-
ness to testify."   Counsel for the defendant thereupon
announced that, "saving our exceptions to the rulings
of the court, we will go on with the trial," and there-
upon Mr. Clark was examined.

Section 4421 of the Code, after limiting the county
attorney to witnesses examined before the grand jury,
a minute of whose testimony is returned with the

indictment, and to those for whose examination he had given four days' notice, provides as follows: "Provided, that whenever the district attorney desires to introduce evidence to support the indictment, of which he shall not have given four days' notice, because of insufficient time therefor since he learned said evidence could be obtained, he may move the court for leave to introduce such evidence, giving the name, place of residence, and occupation of the witnesses he desires to introduce, and the substance of what he expects to prove by said witnesses, and showing diligence such as is required in a motion for a continuance supported by affidavit, whereupon, if the court sustain said motion, the defendant shall elect whether said cause shall be continued on his motion, or the witness shall then testify; and if said defendant shall not elect to have said cause continued, the district attorney may examine said witnesses in the same manner, and with the same effect, as though four days' notice thereof had been given defendant as hereinbefore provided, except that the district attorney, in the examination of said witnesses, shall be strictly confined to the matters set out in his motion."

The evident purpose of these provisions is to inform the defendant in time to enable him to prepare to defend against the same, and of the witnesses and evidence by which he will be confronted. If he permits a witness to be examined without objection who was not before the grand jury, and for whose examination no notice was given or leave granted, he should not be heard to complain, for, by failing to object, he waived his right to notice and to time. When a motion for leave to examine a witness is filed, the defendant has the notice contemplated, and when the leave is granted he has the election to take time or not. It is his privilege to elect to have the cause continued, thereby insuring to himself time to prepare to meet the

proposed evidence. If he does not elect to take a continuance, he certainly should be held to have waived the time. The situation is not unlike what it would be if less than four days' notice had been given, and the defendant had failed to object to the examination of the witness. Whether the motion for leave is rightfully or wrongfully sustained, the only right given to the defendant is the election to continue the case.

V. The state was permitted, over the defendant's objections, and the protests of the witnesses, to examine

5. EVIDENCE: privileged communications: attorney and client.

E. A. Morling, Esq., and George E. Clark, Esq., and to require them to produce certain documents which the state introduced in evidence. The ground of the objections and protests was, that the possession of the documents and matters inquired about were privileged. It appears, without dispute, that these gentlemen, with J. E. Steele, Esq., were the attorneys for the defendant in his suit in which the special findings were returned, and that, for the purpose of preparing to submit a motion for a new trial in that case, Mr. Steele, with the knowledge of this defendant, sent to Clark and Morling, each, a copy of the findings, as returned by the jury. Mr. Clark, being required to testify, stated that on or about January 28, 1892, he received a postal card from the defendant, which, in obedience to the ruling of the court, he produced; that, in compliance with the request in the card, he sent his copy of the findings to the defendant; and that in a week or ten days they were returned to him, altered in the particulars as charged in the indictment. Mr. Morling, being required to testify, stated that he received a letter from the defendant, which, in obedience to the ruling of the court, he produced; that, in compliance with the defendant's request, he sent him the copy of the findings. The postal card, stamped "Spencer, 28 P. M., 1892, Iowa," is as follows:

"*Geo. E. Clark, Esq., Algona, Iowa:*

"Please return to me the copy of special findings in my salary suit, that I sent you. J. A. Richardson, former traveler for Pill Co., wants to see the findings, as the Co. owed him $518.00. Please hunt up and send to me at once.        A. E. KIDD."

The letter to Mr. Morling is dated "Spencer, Iowa, January 28, 1892," and contained the same request and gives the same reason. It does not appear that Mr. Morling's copy was returned to him, but there is evidence tending to show that said copy was also altered in the particulars charged.

The rule as to privileged communications is prescribed in section 3643 of the Code, and, as applied to a practicing attorney is as follows: That he shall not "be allowed in giving testimony to disclose any confidential communication properly entrusted to him in his professional capacity; and necessary and proper to enable him to discharge the functions of his office according to the usual course of practice," unless his client waives the privilege. Writings, when confided to an attorney, when within the rule, are privileged, the same as verbal communications. Communications, to be privileged, must be confidential; that is, "communicated in confidence; privately intrusted, secret; in reliance on secrecy." Webster. The special findings, as returned by the jury, were a matter of public record, and, therefore, sending a copy thereof to the attorney was not a confidential communication, as it imparted no information that was not open to the world. The postal card and letter do not indicate upon their face that the request to return the copies was made in expectation that it would be kept secret. No one would think of charging Mr. Morling or Mr. Clark with violating professional confidence, had they told that they had received the copies of the findings, and the written request to return them, to be shown to another person.

They knew of no other reason for the request than that stated, and there is an entire absence of the elements of a confidential communication in the transaction.

The state claims that the true reason for desiring the return of the copies was that they might be changed to correspond with the original as altered. Had the defendant stated such to be his reason for desiring the return of the copies, we might hold that the communication was confidential. We are of the opinion, that the copies of the findings, as returned by the jury, and the written requests that they be returned, were not confidential communications, and, therefore, not privileged. Mr. Clark's copy was returned to him, changed to correspond with the original as altered. It may be conceded that this was a confidential communication, but it is not every confidential communication that is privileged. It was neither proper nor necessary to place a false copy of the findings, as returned by the jury in the hands of Mr. Clark, to enable him to discharge his duties as attorney for this defendant in his civil action. He was not informed that the copy was false. The evident intent was to deceive him, as well as the court, with respect to these findings: "Professional communications are not privileged, when such communications are for an unlawful purpose, having for their object the commission of a crime." 19 Am. and Eng. Encyclopedia of Law, 140, and cases cited. That the findings were altered as charged, and that Mr. Clark's copy was returned to him with the same alterations, there is no question. We are clearly of the opinion that the altered copy was not privileged.

When about to submit the motion for a new trial, Mr. Morling discovered the alterations in the findings, and had some conversation with the defendant in relation thereto. The court held, that what was said as to the effect of the change upon the civil action and the motion for a new trial was privileged, but what was

said as to when or how the changes were made, was not. Under this ruling, Mr. Morling testified that nothing was said as to whether the findings had been changed, as to who had changed them, or the circumstances under which they were changed; that he said to defendant that, in view of the situation, they would probably get up some scheme to lay it on him; and that he said he had nothing to do with it. Even if the ruling was erroneous, it was without prejudice to the defendant, as the testimony is in no sense against him.

VI. The court instructed that, to convict, the jury must find that the defendant made the alterations

6. FORGERY: intent to defraud: instructions to jury.

substantially as charged, and that they were made with intent to defraud. The appellant asked an instruction to the effect that, the state must prove "both an intent to defraud some person, and that there was some person, partnership or corporation that could have been defrauded." He complains of the refusal to give this instruction, and contends that the evidence fails to show the existence of any person, partnership or corporation capable of being defrauded by the changes. Under section 4313, "it is sufficient if there appear to be an intent to defraud the United States or any state, county, city or township, or any body corporate, or any officer in his official capacity, or any copartnership or any member thereof, or any particular person." That the person who altered the special findings intended to defraud the defendant in that action, admits of no doubt. There was no other motive discernible for committing the forgery. It is argued that there is no evidence that the American Pill & Medicine Company was either a body corporate or a copartnership. While there is no direct evidence of the character of this company, we have the fact that this defendant brought his action against it upon a contract of employment made with it; that the company answered as a

corporation, and the defendant prosecuted his action to a trial and verdict without any question that the company was not so organized as to be liable to be sued. It is too late, in the face of this record, for the defendant to complain that the American Pill & Medicine Company is not capable of being defrauded.

The appellant also complains of the sixth paragraph of the charge, "because he therein submitted to the jury the question whether or not the alleged changes were material, and whether they caused the findings to appear as having been decided more favorably to the defendant than they in fact were." The court properly instructed that the findings were upon material issues in that 'case, and, as bearing upon the question of intent, left it to the jury to say whether the alterations made the case appear to have been decided more favorably to this defendant than it was in fact decided. In view of the other special findings, this question was properly left with the jury, even if, under different facts, it would be otherwise.

VII. The appellant contends that the crime of fraudulent obliteration of instruments in writing as

7. ——: degrees of offense: altering written instrument. defined in section 3929 of the Code, is a lower degree of the crime of forgery, as defined in section 3917, and charged in the indictment, and complains that the jury were not instructed as to the lower degree. Section 3917 defines as a crime the falsely making, altering, forging or counterfeiting of any of the instruments named, with intent to defraud. Section 3929 provides that the total or partial erasure or obliteration of said instrument, with intent to defraud, shall be deemed forgery. The crimes are different and distinct; the latter consisting in the partial or total destruction of the instrument, while the former consists in making the instrument. The making may be by producing a new instrument, or by altering one in existence so as to make it

VOL. 89—5 .

a different instrument. The one crime consists in making with intent to defraud; the other, in destroying.

VIII. The appellant contends that his motion for a new trial should have been sustained, on the grounds that the evidence failed to show that he made the alterations charged, and because of misconduct of the county attorney.

The evidence as to the appellant's opportunities to make the alterations at Mr. Steele's office on the twenty-eighth of January is conflicting. It is entirely clear that neither Mr. Steele, nor any of the witnesses there present, saw the defendant make the alterations. It is questionable, under their evidence, whether he could not have done so without being seen by them. It is not required that we set out or discuss the evidence. It is sufficient to say that the verdict has such support that it should not be disturbed on this ground.

The county attorney, in the closing argument, said, in substance, that, if the defendant or his attorney knew who the guilty party was, why did they not come on and prove it? The fact that they did not do so shows guilt.

8. TRIAL in criminal cases: reference to defendant's failure to testify.

If a person knows who the guilty party is, and does not attempt to prove it, in a case of this kind, he is guilty of criminal negligence. This language seems to have been called out by the remarks of defendant's attorney in stating the case to the jury, to the effect that, if the case went so far as that the defendant's evidence would be introduced, they would show who the guilty parties were. The remarks of the county attorney did not mention the fact, that the defendant had not testified in his own behalf, and were in reply to what the defendant's attorney had said, and would not be understood as having any reference thereto.

The case has been presented with marked care and ability, nothing being omitted that might be said on

behalf of the appellant. We have considered the record with care, and reach the conclusion that the judgment of the district court should be AFFIRMED.