(December 19, 1908.)

## In re J. L. NIDAY.

[98 Pac. 845.]

ATTORNEY AND CLIENT—PRIVILEGED COMMUNICATIONS—ATTORNEY AS WITNESS—BURDEN OF SHOWING PRIVILEGED CHARACTER OF COMMUNICATIONS—PROBATE COURT—JURISDICTION IN CONTEMPT CASES.

1. Under the provisions of subd. 2, sec. 5958, Rev. Stat., "An attorney cannot, without the consent of his client, be examined as to any communication made by the client to him, or his advice given thereon in the course of professional employment."

2. When an attorney is called as a witness and declines to answer a question or produce letters or documents, on the ground that

Points Decided.

the same are privileged under the provisions of subd. 2, sec. 5958, Rev. Stat., the burden is upon him to show sufficient facts and circumstances to establish the general privileged character of the communications or documents.

3. The rule does not necessitate the attorney disclosing the contents of the documents or import of the communications, but rather devolves upon him the necessity of showing the relation existing between him and his client at the time the communications or documents were received, and the circumstances under which he came into possession of the same, and that they were obtained by him while acting as attorney for the client and in connection with his professional engagement concerning which the information was to be used.

4. In a case where N. was general attorney for S., and while such attorney received letters from G., which letters had been written by S. to G. concerning the business transactions involved in subsequent litigation referring to the income and revenue obtained from the business thereafter involved in the litigation, and it does not appear that N. was employed through the agency of G., or that G. was directed to submit the letters to N. for his information and advice, and it does not appear that the same were submitted to N. for any legal opinion or for use in any litigation, or upon which to render an opinion or legal advice to S., and it does not appear that G. was the agent of S. either for the purpose of employing an attorney or procuring legal advice for S., or concerning the latter's business; *Held*, that N. has not made a sufficient showing to entitle him to refuse to produce the letters or to claim them as privileged communications.

5. Sec. 5165, Rev. Stat., which provides that "When the contempt consists in the omission to perform an act which is yet in the power of the person to perform, he may be imprisoned until he have performed it, and in that case the act must be specified in the warrant of commitment," is applicable to the probate court in a case where a witness refuses to appear or testify or to produce letters and documents ordered by the court.

6. Under the provisions of secs. 9 and 10 of the act approved March 6, 1893 (Sess. Laws 1893, p. 134), providing for the taking of depositions, the probate court or judge thereof has authority, upon application of a commissioner authorized to take depositions, to order the witness to appear and testify, and upon his refusal to do so, to adjudge him guilty of contempt in disobeying the order.

(Syllabus by the court.)

Original application by J. L. Niday, an attorney, for a writ of *habeas corpus*. *Writ quashed* and petition dismissed.

J. L. Niday, *pro se,* and A. A. Fraser, for Petitioner, file no brief.

H. E. McElroy, for Sheriff.

"The burden is upon the party seeking to suppress the evidence to show that it is within the terms of the statute relating to confidential and privileged communications." (*Sharon v. Sharon,* 79 Cal. 678, 22 Pac. 26, 131; *Carroll v. Sprague,* 59 Cal. 660.) It must appear that the attorney was employed in relation to the matter to which the document relates, and that the communication was made for the purpose of securing his professional aid or advice. (*Satterlee v. Bliss,* 36 Cal. 490.)

"If the paper is one which the client himself could be compelled to produce in evidence, the attorney must produce it." (10 Ency. Ev. 271; 4 Wigmore, Evidence, sec. 2307.)

As to the jurisdiction of the probate court to make an order of this character, we refer to *Ex parte Latimer,* 47 Cal. 133, where the court held that secs. 1209 and 1229 of the Code of Civil Procedure of that state applied to justice's courts. These secs. are identical with sections 5165 to 5168, Rev. Stat.

AILSHIE, C. J.—The petitioner, J. L. Niday, was adjudged guilty of contempt by the probate court of Ada county and committed to the sheriff of Ada county, to be held in custody by him until such time as he should produce certain letters and communications delivered to him by one R. E. Green. He thereupon applied to this court for a writ of *habeas corpus;* the writ was granted and the sheriff has made return thereto, and the petitioner has demurred to the return on the ground that it does not state facts sufficient to justify the sheriff in holding him. The contempt for which the petitioner was adjudged guilty grows out of the following circumstances:

There is, and for some time past has been, pending in the supreme court of the state of New York, for the county of Erie, an action wherein Nampa & Meridian Irr. Co. is plaintiff and John M. Satterfield is defendant. On June 22, 1908, the New York court issued and directed a commission to Walter S.

Bruce of Boise, Idaho, to take the deposition of the petitioner herein, J. L. Niday, and annexed to the commission certain interrogatories. The commission and interrogatories were received by Mr. Bruce; the witness appeared and answered the questions until he came to the seventh interrogatory, to which interrogatory he declined to answer or to produce the writings therein called for on the grounds that the same was privileged under the provisions of subd. 2, sec. 5958, Rev. Stat. of Idaho. The commissioner, Mr. Bruce, thereupon issued a subpoena *duces tecum* to Mr. Niday, requiring him to appear and testify at a specified time and place and to bring with him the letters and communications called for in the interrogatories. The witness declined to produce the letters and documents, claiming that the same were privileged communications passing between client and attorney. Application was thereupon made to the probate court of Ada county for an order directed to the witness requiring him to appear and answer the question and produce the letters and documents called for. He disobeyed the order and refused to comply therewith. Thereupon he was cited by the probate court to appear and show cause why he should not be dealt with for contempt. He appeared and, after a hearing, was adjudged guilty of contempt of court in disobeying the previous order made, and was thereupon committed as hereinbefore stated.

The first seven interrogatories propounded to the witness are as follows:

"1. State your name, age, residence and occupation?

"2. Are you acquainted with the defendant?

"3. Have you ever been employed by him as an attorney?

"4. If so, when did the employment begin and when did it end?

"5. State whether or not at any time since January 1, 1905, you have received into your possession from one R. E. Green of Nampa, Idaho, what purported to be letters or telegrams from the defendant to said R. E. Green in relation to any matter between the said defendant and the plaintiff, and particularly with relation to an accounting between said parties in regard to the revenue derived from the canal system in Idaho, known as the Ridenbaugh canal system for the year 1905?

"6. If you answer the last preceding interrogatory in the affirmative, state when you received the documents therein referred to and also whether or not the same are still in your possession?

"7. If you say they are in your possession, produce the same and attach them to your deposition and state that you have done so, or if you are unwilling to surrender possession of the originals, submit them to the commissioner for his examination and allow him to make copies thereof to be attached in place of the originals?"

The answers to those questions are as follows:

"To the first interrogatory, he says: J. L. Niday; age, 42 years; occupation, lawyer.

"To the second interrogatory, he says: Yes.

"To the third interrogatory, he says: Yes.

"To the fourth interrogatory, he says: About December, 1906, and is not yet terminated.

"To the fifth interrogatory, he says: Yes.

"To the sixth interrogatory, he says: About October 1, 1907, and they are still in my possession.

"To the seventh interrogatory, he says: I claim the letters referred to and the information therein contained as privileged communications between client and attorney, and I refuse to surrender possession of the originals or to permit copies made thereof, without the consent of the defendant, Mr. Satterfield."

It will therefore be seen that the only question presented is that of the privileged or nonprivileged character of the letters and documents called for by interrogatory No. 7.

Subd. 2, sec. 5958, Rev. Stat., under which petitioner claims these communications to be privileged, is as follows:

"An attorney cannot, without the consent of his client, be examined as to any communication made by the client to him, or his advice given thereon in the course of professional employment."

The rule seems to be well established that when an attorney declines to answer a question or produce letters or documents on the ground that the same are privileged, the burden is upon him to show sufficient facts and circumstances to establish the

privileged character of the communications or documents. This rule is founded in justice and fair dealing. It does not necessitate the attorney disclosing the contents of the documents or the communication itself, but it does devolve upon him the necessity of showing the relation that existed between him and the client at the time and the circumstances under which he came into possession of the communication or information, and that the same was obtained by him while acting as attorney for the client, and in connection with his professional engagement and concerning which the information was to be used. Weeks on Attorneys, sec. 147, says:

"The burden is upon the party who seeks to have his statements suppressed as evidence, because they are privileged. The facts that would make them so must be proved. Where an attorney testified that he never understood 'he was counsel, or to be counsel, in this matter,' etc., this took the statements made out of the list of privileged communications."

In *Carroll v. Sprague*, 59 Cal. 660, the supreme court of California was considering a communication between attorney and client which was claimed to be privileged, and in passing on the question, said:

"But it was incumbent on the party who objected to the examination of Burt as to what Eckert had told him to show that the communication was privileged, and unless it was made when Eckert was seeking professional counsel, advice, or aid in relation to the same property, it was not privileged. It was not that Burt or Burt & Gale had 'incidentally or otherwise done a great deal of business for Eckert.' The material question was whether any professional counsel, advice, or aid had been solicited or given in relation to this particular property. As to that we are left wholly in the dark." (*Sharon v. Sharon*, 79 Cal. 678, 22 Pac. 26, 131; *Earle v. Grout*, 46 Vt. 113.)

In the case under consideration, the petitioner, in reply to the order to show cause why he should not be dealt with for contempt, did not attack the regularity of any of the previous proceedings, but, on the other hand, admitted that he had failed and refused to obey the order of the court, and based his

disobedience and refusal solely on the ground that the letters sought were privileged communications, and in his reply said: ''That the said letters (there being no telegrams in his possession) were delivered to the said J. L. Niday while the relation of attorney and client existed between him and the said J. M. Satterfield mentioned in said order, and by reason thereof.''

It appears from the findings and judgment of the probate court that evidence was taken at this hearing, but the same was evidently not reported and has not been produced here. The probate court, however, made findings of fact which were sent up with the returns in this case. Among those findings are the following statements of fact, which we must presume are based upon the return made by the petitioner and the evidence produced thereon:

''That the said letters were not communications from the said defendant, John M. Satterfield, to the said defendant, J. L. Niday, either in the course of professional employment as attorney for the defendant or at all, and were not communications to the said R. E. Green in the course of professional employment as attorney for defendant. That at or prior to the time said letters were delivered to the said J. L. Niday, said J. L. Niday had received no communication from the said John M. Satterfield of any character in relation to the matters involved in said action, and that at the time of delivering said letters to said Niday, said Green did not employ said Niday as attorney for said John M. Satterfield in relation thereto, neither did he request the professional advice or opinion of said Niday in relation to said matters as the agent of said Satterfield, nor was any evidence offered in this case showing that said Green was agent for said defendant for said or any purpose.''

The petitioner's own evidence given before the commissioner shows that he did not become the attorney for Satterfield until December, 1906, and that he did not come into possession of these letters until October, 1907. It nowhere appears that he was employed as Satterfield's attorney by Green. The presumption is that he was employed by Satterfield directly. The letters in his possession were written by Satterfield to Green,

and appear to be in relation to an accounting between Satterfield and the Nampa & Meridian Irr. District, in regard to the revenue derived from the canal system for the year 1905. It nowhere appears when or under what dates these letters were written. It is to be presumed, however, that they were written after the close of the year 1905, and it is fair to presume, in the absence of any contrary showing, that it must have been some time during the following year. There is no contention that the letters were written with reference to the employment of Mr. Niday, nor with any direction that the same should be delivered by Mr. Green to Mr. Niday. If they were written prior to December, 1906, they must have been written before Mr. Niday's employment. There is no showing that Mr. Green was the agent of Satterfield, either for the purpose of employing an attorney or consulting and communicating with the attorney with a view to obtaining legal advice relative to his principal's business. (*Sharon v. Sharon*, 79 Cal. 678, 22 Pac. 26, 131; *Hager v. Shindler*, 29 Cal. 63.) The probate judge finds that from the evidence produced before him there was no proof at all to the effect that Mr. Green was in fact Satterfield's agent for any purpose. There can be no doubt, under our statute, but what these communications would be privileged if they were received by the attorney in the course of his legal employment by the client, and for the purpose of giving him legal advice thereon, or using the same in connection with his legal engagement with the client. Before he can be excused under this claim of privilege, he must show that the communication falls within the rule of the statute. The rule is intended to promote justice and protect persons who are obliged to disclose their private business affairs to an attorney in order to be advised of their legal rights and duties. It is defensive and not offensive. It is intended as a shield and not a sword. The communication must have been confidential and so understood and intended. (Weeks on Attorneys, sec. 153; *Sharon v. Sharon*, 79 Cal. 678, 22 Pac. 26, 131; *Hatton v. Robinson*, 14 Pick. 416, 25 Am. Dec. 415; *DeWolf v. Strader*, 26 Ill. 371, 79 Am. Dec. 371; 10 Ency. of Ev. 270; *State v. Kidd*, 89 Iowa, 54, 56 N. W. 263.)

It is further claimed by petitioner here that the probate court has no authority to make such an order as the one made in this case. That contention is disposed of by the provisions of the statute. Secs. 9 and 10 of the act approved March 6, 1893 (Sess. Laws 1893, p. 134), providing for the taking of depositions, are as follows:

"Sec. 9. The officer taking the deposition shall have power to summon and compel the attendance of witnesses. In case of the refusal of a witness to attend or testify, such fact shall be reported by the officer to any probate or district court of the county, or the judge thereof, and such court or judge shall order such witness to attend and testify; and on the failure or refusal to obey such order, such witness shall be dealt with as for a contempt."

"Sec. 10. The provisions of the last section shall extend to all officers and commissioners authorized to take depositions in this state to be read in the courts of other states or countries."

It will be noticed from this statute that the same power is given to the probate court that is possessed by the district court to deal with witnesses for contempt in reference to attending and testifying before an officer taking depositions.

It is claimed, however, by the petitioner, that under the provisions of secs. 4750 to 4754, inclusive, of the Rev. Stat., justice's courts and probate courts are limited in their power to punish for contempt to a fine not exceeding $100 or one day's imprisonment, and that the probate court had no authority to make an order directing the imprisonment of the petitioner until he complies with the order of the court. Our statutes on contempt, both in justice's and probate courts, as well as contempt of courts generally, were copied from the statutes of California. Secs. 4750 to 4754, correspond with secs. 906 to 910 of the Code of Civil Procedure of California, while secs. 5155 to 5168, inclusively, of the Rev. Stat., dealing with contempts generally, correspond with secs. 1209 to 1222, inclusively, of the Code of Civil Procedure of California dealing with the same subject. Sec. 4777, Rev. Stat. of Idaho, corresponds to sec. 925 of the Code of Civil Procedure of California with reference to the general provisions of the statutes

"which are in their nature applicable to the organization, powers and course of procedure" in justice's and probate courts.

In *Ex parte Latimer*, 47 Cal. 131, the supreme court of California had under consideration the question as to the power of a justice of the peace to commit a person for contempt in refusing to obey an order of the court and directing that he be imprisoned until he complied with the order. The court there held that the provisions of sec. 1219 of the Code of Civil Procedure of California are applicable to justices' courts. Sec. 5165 of the Rev. Stat. of this state is identical with the last named section of the California code. Since these provisions of the statute were copied from the California code, and had been construed by the highest court of that state at the time of their adoption by the legislature of this state, we are constrained to accept the construction placed upon them by the courts of the state from which they were taken. (*Stein v. Morrison*, 9 Ida. 426, 75 Pac. 246; *O'Neill v. Potvin*, 13 Ida. 732, 93 Pac. 20, 257.)

From what has just been said, we conclude that the sheriff's return to the writ herein constitutes sufficient justification for his detention of the petitioner until he complies with the order of the probate court. The writ is quashed and the petitioner is remanded to the custody of the sheriff.

Sullivan, J., and Stewart, J., concur.