PABLO BIGIO RODRÍGUEZ, Petitioner, v. DISTRICT COURT OF SAN JUAN, Respondent.

No. 959. Argued March 21, 1934.—Decided April 5, 1934.

R. Martínez Nadal, F. Navarro Ortiz, and L. Llorens Torres for petitioner.

MR. JUSTICE CÓRDOVA DÁVILA delivered the opinion of the court.

In this case a writ of certiorari has been requested to review the acts of the District Court of San Juan in a contempt proceeding brought against Pablo Bigio Rodríguez, who served as a juror at the trial of the criminal action brought by the People of Puerto Rico against Ramón Grau for robbery. The complaint filed by the prosecuting attorney against the petitioner was demurred to and the court dismissed the demurrer, basing its decision on the reasons set forth in an elaborate opinion.

In the petition it is alleged that the trial against Ramón Grau began on February 6, 1934, and lasted four days, the jury having been dissolved on the 10th of the same month for failure to agree on a verdict; that five days later, or on February 15, 1934, when said criminal action had ended with the dissolution of the jury, that is, when the case was no longer pending in the court, the district attorney, Hon. Domingo Massari, filed a complaint in the said District Court of San Juan against the petitioner herein, Pablo Bigio Rodríguez, charging him with criminal contempt for perjury in that, upon being examined as to his capacity to serve as a juror, he falsely stated that he had no motive whatsoever that might prevent him from returning an impartial verdict, such statement being false, according to the allegations of the complaint, because said juror, Pablo Bigio, had subsequently, during the secret deliberations of the jury, made statements to the other jurors and acted in such a way as to show that he had falsely sworn as to his impartiality in order to act as a juror in said action.

In the complaint filed by the district attorney for the district of San Juan against the petitioner, the following facts are stated:

1. That on February 6, 1934, there began in the District Court of San Juan, the trial by jury of the case of the *People of Puerto Rico* v. *Ramón Grau,* for the crime of robbery committed within the ju-

dicial district of San Juan, and there were summoned to appear on said date in accordance with the law, the number of jurors from which was to be selected the panel of twelve jurors who were to hear and decide said criminal case.

2. That the trial lasted four days, during which all of the evidence in the case was presented; consisting of the testimony of witnesses, documents, and objects.

3. That before the jury was formed, all of the jurors were sworn in order to proceed to qualify them and later the court took the final oath of the twelve jurors who were to hear the evidence of the case for the purpose of deciding it in accordance with the evidence and the law.

4. That among the twelve jurors who were finally sworn and who heard the evidence, was Pablo Bigio, of Río Piedras, against whom this complaint is directed, and who, upon being examined as to his capacity to serve as a juror in the case, stated under oath that he had no motive whatever in relation to the defendant or his attorneys, Messrs. Martínez Nadal, Navarro Ortiz, and Díaz Viera, which might prevent him from returning a just and impartial verdict.

5. That after the evidence, the arguments of counsel, and the instructions of the court had been completed, the jury withdrew to deliberate and its deliberation lasted for more than 24 hours, and after said time had elapsed, the foreman of the jury and other jurors stated to the court that it was absolutely impossible to reach a verdict, and in view of these statements the court had to dissolve the jury and the case was not decided.

6. And the district attorney alleges that the failure of the jury to arrive at an agreement was due exclusively to the attitude assumed by the said Pablo Bigio, who with the deliberate intention of obstructing the administration of justice, unlawfully, wilfully, and maliciously, and in a corrupt manner answering falsely as to his impartiality for trying the case, succeeded in being admitted as a juror for the sole purpose of preventing the rendition of a verdict of guilty against the said defendant. And in order to accomplish his purpose he committed, during the course of the deliberations, the following acts:

(a) He stated, during the deliberations of the jury, "that the defendant must be acquitted by all means."

(b) He was evasive and refused to give reasons or to hear arguments.

(c) He obstinately refused to discuss the evidence at all.

(d) He stated that he would continue in that attitude for three days, or a week, or a month, or any length of time that might be necessary.

(e) He withdrew from the other jurors and sat apart on a chair leaning against the wall, and refused to hear arguments.

(f) He gave as a pretext that the only way in which he would convict the defendant would be that the jury convict also a witness in the case who was not on trial and whose conduct was absolutely extraneous to the judicial function of the jury, which must be performed in accordance with the law, the facts, and the instructions of the court.

(g) He refused to have any further instructions requested from the court.

(h) He refused to accept suggestions made to him, to ask the court to have a part of the testimony read to him for the purpose of elucidating any fact.

(i) He stated that "they would have to kill him before they could change his mind."

(j) He stated to some jurors that he owed his position in the Department of the Interior to Attorney Navarro Ortiz against whom he could not act nor could he act against his client, said attorney being one of the members of the firm of Martínez Nadal and Navarro Ortiz, who then and there acted as counsel for the defendant.

(k) Every time that a juror approached him to try to argue or reason with him, he would say that he had no desire to argue; that when the others should have agreed to acquit the defendant they could tell him.

(7) And the district attorney alleges that in so acting, the said Pablo Bigio testified falsely, deliberately hiding from the court the favor that he owed to one of the attorneys for the defense, which in itself would have been sufficient ground to challenge him for cause, and likewise he answered falsely when he stated that there existed no motive which might prevent him from returning a just and impartial verdict. And having thus falsely answered under oath the questions that were put to him in open court as to those essential points, such attitude was adopted and such acts were done by the said Pablo Bigio with the deliberate intention of obstructing the proper administration of justice, and in contempt of the court before which the defendant, Ramón Grau, was to be tried.

This court refused to issue the writ of certiorari originally requested to review the action of the lower court, and

thereupon the petitioner filed an amendment to the petition, and requested that our decision be reconsidered and that an opportunity be given to him to be heard, through his counsel, on the question of the availability of the writ sought.

The amendment to the petition which we consider as made, contains the following allegation: ·

"That the hearing of the charge of contempt for perjury to which the original petition in this certiorari proceeding refers, was set by the Hon. Judge Pablo Berga for the 27th of the present month, and has been continued to the 4th of the following month of April; that the petitioner who is one of the jurors of this District of San Juan, is at present included in the panel of jurors who, for more than a week, have been selected in said District Court for the criminal cases that are being tried in the present term before said Court; that every time the petitioner, Pablo Bigio, has been called as a result of his name having been drawn in the drawing made in all actions, he has been challenged because of the prejudice roused against him by the complaint of the district attorney and the prosecution to which the present certiorari refers; and that, for this reason, said prosecution in which the Court of San Juan is acting without jurisdiction and in violation of the law of procedure, is causing irreparable damage and anguish to the petitioner; and this is another ground on which we allege that the remedy of appeal, which might be had in the future, under the special circumstances of this case, is not an adequate, speedy, and effective remedy for freeing the petitioner from the injuries that he is suffering in said prosecution."

In the motion for reconsideration it is said that we have responded to the original petition for a writ of certiorari with only two words: "Writ denied." Commenting on our refusal to issue the writ, the petitioner through his learned counsel says:

"We do not think that the ground relied upon for said decision is any procedural technicality or the lack of any technical requisite, because we are certain that your judgment has never favored the disregard of substantial rights by subordinating them to the requisites of legal technique. It seems to us that your decision is the result of one of these two mental attitudes: Either you think that an appeal lies in this case and that the appeal may be an adequate

and effective remedy for the petitioner; or you consider the order and opinion of the Hon. Pablo Berga, attached as Exhibit F to our petition, as being correct, reasonable, and scientific. In the latter case, we wish to state that we, too, looking at it from our more humble scientific standpoint, have appreciated the juristic labor of the judge in said decision; but we have studied it carefully and we believe that we have available powerful arguments to show that the said decision is erroneous and that it not only violates the constitutional rights of the petitioner but is also prejudicial to the administration of justice in Puerto Rico.''

We refused to issue the writ sought, after having examined the petition, weighed its arguments, and consulted the cases cited by the petitioner and by Judge Berga in his opinion, supplementing it with our own research and study of the questions raised. We are not bound to deliver an opinion every time that a writ of certiorari is denied. It is a well-known fact that the courts of justice do not customarily do it, and the cases are few where the denial of the writ is accompanied by an opinion. We have followed the practice generally established because we do not consider it necessary, in the furtherance of justice, to explain in all cases the reasons which justify our denial, because we do not have time to engage in such work considering the frequency with which recourse is had to this extraordinary remedy, and because we will freely exercise our judgment and deliver an opinion only when the nature of the case is deemed to require it. The present case is not one which, by its nature, justifies our immediate intervention to interrupt the ordinary course of a proceeding, within which the remedy of appeal may be established in due course if the lower court should render a decision adversely to the petitioner. We do not think that the decision which is sought to be reviewed tends to impair the principles of justice or deprive the petitioner of any right. At the hearing of the case he will be able to fully exercise his rights, by objecting to any evidence which he may consider inadmissible, by taking exceptions, and by establishing his innocence if in reality he is not guilty of the acts charged

against him. A juror who has fulfilled his duties and cast his vote in obedience to the dictates of his conscience, and who finds himself in a position where he has to answer a charge such as that made against the petitioner herein, should have no difficulty in dissipating the shadows, in clearing the doubts, and in removing the clouds that may have been cast on his reputation by reason of the charges brought against him. We cannot agree with counsel for the petitioner, however worthy of our respect his opinion may be, that the decision of the lower court impairs the administration of justice in Puerto Rico. We are aware of the responsibility which we assume and of the respect that we must have for the rights of the individual and of society in general. It is our duty to promote confidence in the courts and to contribute, with our efforts, to the maintenance of purity in justice and rectitude in its administration. In the fulfillment of this mission, for us sacred and respected, this court will exercise all of its moral force and all of the authority granted to it by law. If the lower court were lacking in jurisdiction to act, and its decision were prejudicial to the constitutional rights of the petitioner and to the administration of justice, we would not have hesitated to issue the writ requested. We have carefully studied the facts set out in the complaint, and the demurrers filed by the petitioner, and we are of the opinion that the proceeding instituted against him should follow its natural and ordinary course until it is finally decided.

In the demurrer to the complaint it is alleged that the facts shown do not constitute a crime, that they are not contemplated and made punishable by the Act to provide a summary punishment for the crime of perjury in open court and for other purposes, approved in 1911, and that the continuation of this prosecution and the hearing of evidence thereon, in the form adopted by the district attorney, cannot be effected without destroying the doctrine of secrecy or inviolability of the deliberations of the jury.

The lower court does not base its decision on the Act relating to contempt for perjury, which it says does not cover the crime charged against the defendant, but on the Act defining the crime of contempt, approved in 1902, and amended in 1906; on section 7 of the Code of Civil Procedure; and on the inherent power of the district courts to punish acts in contempt of their authority.

The fundamental basis of the complaint is not the perjury, as the petitioner insistently maintains, but his deliberate conduct, according to the facts alleged, in obstructing the administration of justice by making use of a false oath and by hiding facts which he should have revealed, in order to be admitted as a juror, with the sole purpose of preventing, in his character as such juror, that a verdict of guilty be rendered against the defendant. The lower court overruled the demurrers because it understood that the facts alleged in the complaint attribute to Pablo Bïgio a disdainful conduct tending to obstruct the administration of justice, and because it considered that these facts charged the crime of contempt against the defendant. The court *a quo* is not mistaken. The fact that the jury did not reach an agreement was due exclusively to the attitude assumed by Pablo Bigio, who, with the deliberate intention of obstructing the administration of justice, unlawfully, wilfully, and maliciously, and in a corrupt manner, answering falsely as to his impartiality for trying the case, succeeded in being accepted as a juror with the sole purpose of preventing that a verdict of guilty be rendered against the defendant. It is also alleged that the said Pablo Bigio testified falsely, deliberately concealing from the court the favor that he owed to one of the attorneys for the defense, and that he also answered falsely when he stated that there existed no motive which might prevent him from returning a just and impartial verdict. We consider applicable to this case the doctrine established by the Supreme Court of the United States in *Clark* v. *United States,* 289 U.S. 1. In that case Mrs. Genevieve A. Clark served as a

juror in a criminal action brought against William B. Foshay and others. The said Mrs. Clark was an employee of the firm Foshay & Co., of which the defendant was a member. Her husband was also an intimate friend of the defendant. Mrs. Clark stated, without divulging her relations with the said firm, that her mind was free of prejudice and that she would take into account only the law and the evidence in casting her vote. The trial lasted eight weeks. During the first week of the trial Mrs. Clark indicated to several of her companions that she considered that Foshay was a victim of circumstances, that he had gone to New York in the fall of 1929 to borrow $18,000,000, but that because of the sudden depression in the market he was forced to return without a dollar. When asked by a juror where she had obtained such information, which was not supported by the evidence, she answered that she got it from a newspaper that she had read before the trial. Later she expressed her disapproval of the manner in which the government had treated the soldiers after the war. During the deliberations of the jury, after the case was finally submitted, Mrs. Clark announced that since the district attorney had not been able to convince her of the guilt of the defendant, it would be difficult for the other jurors to do so. On occasion Mrs. Clark would put her hands over her ears when the other jurors attempted to reason with her, it being useless to argue with her, because she was not willing to answer. She stated that a witness for the government had given false testimony in the South, in an attempt to have an innocent man found guilty. This information came to her in the course of a conversation with her husband, who had seen her at the hotel in the presence of the bailiff during the trial. After having deliberated for a week, the jury was dissolved because an agreement was not reached. The votes of eleven of them had always been for conviction. The only vote for acquittal was that of Mrs. Clark. The latter was tried and convicted of contempt in the district court before which the action in which she had served as a juror was tried. This

judgment was affirmed by the Circuit Court of Appeals for the Eighth Circuit and, finally, by the Supreme Court of the United States in the case above cited. Speaking for the court, Mr. Justice Cardozo expressed himself as follows:

" 'An obstruction to the performance of judicial duty resulting from an act done in the presence of the court is . . . the characteristic upon which the power to punish for contempt must rest.' White, C. J., in *Ex parte Hudgings*, 249 U. S. 378, 383. The petitioner is not condemned for concealment, though concealment has been proved. She is not condemned for false swearing though false swearing has been proved. She is condemned for that she made use of false swearing and concealment as the means whereby to acomplish her acceptance as a juror, and under cover of that relation to obstruct the course of justice. There is a distinction not to be ignored between deceit by a witness and deceit by a talesman. A talesman when accepted as a juror becomes a part or member of the court. *In re Savin*, 131 U. S. 267; *United States* v. *Dachis*, 36 F. (2d) 601. The judge who examines on the *voir dire* is engaged in the process of organizing the court. If the anwers to the questions are wilfully evasive or knowingly untrue, the talesman, when accepted, is a juror in name only. His relation to the court and to the parties is tainted in its origin; it is a mere pretense and sham. What was sought to be attained was the choice of an impartial arbiter. What happened was the intrusion of a partisan defender. If a kinsman of one of the litigants had gone into the jury room disguised as the complaisant juror, the effect would have been no different. The doom of mere sterility was on the trial from the beginning.

"The books propound the question whether perjury is contempt, and answer it with nice distinctions. Perjury by a witness has been thought to be not enough where the obstruction to judicial power is only that inherent in the wrong of testifying falsely. *Ex parte Hudgings, supra*. For offenses of that order the remedy by indictment is appropriate and adequate. On the other hand, obstruction to judicial power will not lose the quality of contempt though one of its aggravations be the commission of perjury. Cf. *In re Ulmer*, 208 Fed. 461; *United States* v. *Appel*, 211 Fed. 495; *United States* v. *Karns*, 27 F. (2d) 453; *United States* v. *Dachis*, 36 F. (2d) 601; *Lang* v. *United States*, 55 F. (2d) 922; 286 U. S. 523; *United States* v. *McGovern*, 60 F. (2d) 880. We must give heed to all the circumstances, and of these not the least important is the relation to the court of the one charged as a contemnor. Deceit by an attorney may

be punished as a contempt if the deceit is an abuse of the functions of his office (*Bowles* v. *United States*, 50 F. (2d) 848, 851; *United States* v. *Ford*, 9 F. (2d) 990), and that apart from its punishable quality if it had been the act of some one else. A talesman, sworn as a juror, becomes, like an attorney, an officer of the court, and must submit to like restraints. The petitioner blurs the picture when she splits her misconduct into parts, as if each were a separate wrong to be separately punished. What is punished is misconceived unless conceived of as a unit, the abuse of an official relation by concealment and deceit. Some of her acts or none of them may be punishable as crimes. The result is all one as to her responsibility here and now. She has trifled with the court of which she was a part, and made its processes a mockery. This is contempt, whatever it may be besides. *Sinclair* v. *United States*, 279 U. S. 749; *In re Savin*, 131 U. S. 267.''

The other question raised by the petitioner is that pertaining to the secrecy which should prevail in the deliberations of the jury. In support of the proposition that this secrecy is absolutely inviolable, the petitioner cites the text writers Jones and Wigmore, and the case of *People* v. *Reyes*, 6 P.R.R. 195. In the same case of *Clark* v. *United States, supra,* the Federal Supreme Court expresses its opinion with respect to the inviolability of the secrecy, and recognizes that there are some exceptions of fundamental importance. Mr. Justice Cardozo says that the doctrine is developed, and the privilege broadly stated, in Mr. Wigmore's treatise, and adds that it has been recognized to some extent by other authors of prominence in matters of evidence: Hughes, Jones, Chamberlayne; but in a way that has confused it with something very different, the competency of witnesses to testify in impeachment of a verdict. Let us see what this eminent jurist says on this extremely important question:

''The admission of testimony as to the conduct of the petitioner during the deliberations of the jury was not a denial or impairment of any lawful privilege.

''The books suggest a doctrine that the arguments and votes of jurors, the *media concludendi,* are secrets, protected from disclosure unless the privilege is waived. What is said upon the subject in the adjudicated cases, is dictum rather than decision. See *Woodward* v.

*Leavitt,* 107 Mass. 453, 460; cf. *Matter of Cochran,* 237 N. Y. 336, 340; 143 N. E. 212; *People ex rel. Nunns* v. *County Court,* 188 App. Div. (N. Y.) 424, 430; 176 N. Y. S. 858. Even so, the dicta are significant because they bear with them the implications of an immemorial tradition. The doctrine is developed, and the privileges broadly stated, in the writings of a learned author. Wigmore, Evidence, (2d ed.) vol. 5, par. 2346. It has recognition to some extent by other authors of repute (Hughes, Evidence, p. 301; Jones, Commentaries on Evidence, 2d ed., par. 2212; Chamberlayne, Evidence, vol. 5, par. 3707), but in a way that has confused it with something very different, the competency of witnesses to testify in impeachment of a verdict. What concerns us at the moment is the privilege alone. There will be need to recur later to the rule as to impeachment. For the origin of the privilege we are referred to ancient usage, and for its defense to public policy. Freedom of debate might be stifled and independence of thought checked if jurors were made to feel that their arguments and ballots were to be freely published to the world. The force of these considerations is not to be gainsaid. But the recognition of a privilege does not mean that it is without conditions or exceptions. The social policy that will prevail in many situations may run foul in others of a different social policy, competing for supremacy. It is then the function of a court to mediate between them, assigning, so far as possible, a proper value to each, and summoning to its aid all the distinctions and analogies that are the tools of the judicial process. The function is the more essential where a privilege has its origin in inveterate but vague tradition and where no attempt has been made either in treatise or in decisions to chart its limits with precision.

"Assuming that there is a privilege which protects from impertinent exposure the arguments and ballots of a juror while considering his verdict, we think the privilege does not apply where the relation giving birth to it has been fraudulently continued. Other exceptions may have to be made in other situations not brought before us now. It is sufficient to mark the one that is decisive of the case at hand. The privilege takes as its postulate a genuine relation, honestly created and honestly maintained. If that condition is not satisfied, if the relation is merely a sham and a pretense, the juror may not invoke a relation dishonestly assumed as a cover and cloak for the concealment of the truth. In saying this we do not mean that a mere charge of wrongdoing will avail without more to put the privilege to flight. There must be a showing of a *prima facie* case sufficient to satisfy the judge that the light should be let in.

Upon that showing being made, the debates and ballots in the jury room are admissible as corroborative evidence, supplementing and confirming the case that would exist without them. Let us assume for illustration a prosecution for bribery. Let us assume that there is evidence, direct or circumstantial, that money has been paid to a juror in consideration of his vote. The argument for the petitioner, if accepted, would bring us to a holding that the case for the People must go to the triers of the facts without proof that the vote has been responsive to the bribe. This is paying too high a price for the assurance to a juror of serenity of mind. *People ex rel. Nunns* v. *County Court, supra.*

''We turn to the precedents in the search for an analogy, and the search is not in vain. There is a privilege protecting communications between attorney and client. The privilege takes flight if the relation is abused. A client who consults an attorney for advice that will serve him in the commission of a fraud will have no help from the law. He must let the truth be told. There are early cases apparently to the effect that a mere charge of illegality, not supported by any evidence, will set the confidences free. See, e.g., *Reynell* v. *Sprye*, 10 Beav. 51, 54, 11 Beav. 618; *In re Postlewaite*, 35 Ch.D. 722, 724; cf. *Regina* v. *Bollivant* (1900) 2 Q.B.D. 163, (1901) A.C. 196. But this conception of the privilege is without support in later rulings. 'It is obvious that it would be absurd to say that the privilege could be got rid of merely by making a charge of fraud.' *O'Rourke* v. *Darbishire*, (1920) A.C. 581, 604. To drive the privilege away, there must be 'something to give colour to the charge;' there must be *prima facie* evidence that it has some foundation in fact.' *O'Rourke* v. *Darbishire, loc. cit., supra;* also pp. 614, 622, 631, 633. When that evidence is supplied, the seal of secrecy is broken. See also: *Regina* v. *Cox,* (1884) 14 Q.B.D. 153, 157, 161, 175; cf. *Bujac* v. *Wilson,* 27 N. Mex. 112; 196 Pac. 513; *In re Niday,* 15 Idaho 559; 98 Pac. 845. The judgment of the House of Lords in *O'Rourke* v. *Darbishire* has given to the whole subject a difinitive exposition. Nor does the loss of the privilege depend upon the showing of a conspiracy, upon proof that client and attorney are involved in equal guilt. The attorney may be innocent, and still the guilty client must let the truth come out. *Regina* v. *Cox, supra; Mathews* v. *Hoagland,* 48 N.J. Eq. 455, 469; 21 Atl. 1054; *State* v. *Faulkner,* 175 Mo. 546, 593; 75 S. W. 116; *Standard Fire Ins. Co.* v. *Smithhard,* 183 Ky. 679, 684; 211 S. W. 441; *State* v. *Kidd,* 89 Iowa 54; 56 N. W. 263; cf. *Bank of Utica* v. *Mersereau,* 3 Barb. Ch. 528, 598; *Coveney* v. *Tannahill,* 1 Hill (N. Y.) 33, 41.

"With the aid of this analogy, we recur to the social policies competing for supremacy. A privilege surviving until the relation is abused and vanishing when abuse is shown to the satisfaction of the judge has been found to be a workable technique for the protection of the confidences of client and attorney. Is there sufficient reason to believe that it will be found to be inadequate for the protection of a juror? No doubt the need is weighty that conduct in the jury room shall be untrammeled by the fear of embarrassing publicity. The need is no less weighty that it shall be pure and undefiled. A juror of integrity and reasonable firmness will not fear to speak his mind if the confidences of debate are barred to the ears of mere impertinence or malice. He will not expect to be shielded against the disclosure of his conduct in the event that there is evidence reflecting upon his honor. The chance that now and then there may be found some timid soul who will take counsel of his fears and give way to their repressive power is too remote and shadowy to shape the course of justice. It must yield to the overmastering need, so vital in our polity of preserving trial by jury in its purity against the inroads of corruption. Cf. *Attorney-General* v. *Pelletier*, 240 Mass. 264; 134 N. E. 407; *People ex rel. Hirschberg* v. *Board of Supervisors*, 251 N. Y. 156, 170; 167 N. E. 204; *State* v. *Campbell*, 73 Kan. 688; 85 Pac. 784.''

The vigorous reasoning of Justice Cardozo shows that there is a fundamental and supreme principle, to which all of the others are subordinated, and that is purity in judicial actions to insure the realization of justice. Secrecy in the deliberations of the jury is a traditional custom established as a matter of public policy, so that the judges of fact may have freedom of action and may express their arguments and cast their votes freely, without feeling hampered by the fear of publicity. The end pursued is justice; secrecy is a means of facilitating its realization. This reserve should disappear when it no longer serves its purposes and it becomes necessary, for the protection of those same purposes, to tear away the veil and ascertain the truth. When the end is in danger, society, represented by the state, must utilize its forces to save it from shipwreck. If there is a *prima facie* showing that something extraordinary has occurred in the room where the jurors deliberate, which might seriously affect the realiza-

tion of justice, which is not impossible in view of human imperfection, the privilege of secrecy must give way to a vital question of public interest, in order that the light of truth may be let in. Justice recognizes no barriers. There is no field which is closed to its mission of reparation. Its radius of action is unlimited and its arms extend to all places where human activities develop. If the *prima facie* showing becomes a conviction, then the punishment of the guilty party is also a means for maintaining the purity of justice and facilitating its administration, since it exerts a healthy influence and publicly makes known that there is no impunity for fraud and corruption, wherever the same may appear. The maintenance of these principles cannot instill fear in any juror however humble of spirit he may be. The honest and honorable man has nothing to fear. Secrecy in the deliberations will not be violated when the jurors have fulfilled their duties, because no substantial evidence (*principio de prueba*) will be produced to justify the revelation.

The accusation filed against Pablo Bigio Rodríguez sets up sufficient facts to charge him with the crime of contempt. Whether or not evidence may be adduced in this case tending to reveal events which occurred during the deliberations of the jury, is a question which must be decided by the lower court when the case goes to trial. It is then that the judge must decide whether or not there has been a *prima facie* showing sufficient to satisfy his conscience and to justify the letting in of light. The fact that the witnesses called to testify at the hearing of the contempt charge are the other jurors who served in the case of the *People* v. *Ramón Grau,* does not mean that, even with those witnesses, a *prima facie* showing may not be made sufficient to satisfy the judge that the seal of secrecy should be broken and corroborative testimony admitted.

The motion for reconsideration is denied.