In the Matter of Proceedings to Punish JOHN WERRA, Respondent,
for a Contempt of Court in the Action Entitled CLARENCE W.
BAILEY, Plantiff, v. JOHN J. KUHN, as Receiver of the RICHMOND
LIGHT AND RAILROAD COMPANY, Defendant.*

Supreme Court, Richmond County, March 3, 1924.

Contempt — civil contempt — proceeding pursuant to Judiciary Law, § 753,
to punish respondent for misconduct in willfully violating his duties
as trial juror — acts of juror in violation of Judiciary Law, § 753,
subd. 6, though case was on trial — evidence discloses respondent sought
interview with plaintiff during trial of action in which he was sitting as
juror and demanded sum of money to influence his vote — respondent
guilty of civil contempt, committed to jail, fined and ordered to pay
plaintiff's expenses.

Section 753 of the Judiciary Law providing for the punishment for civil contempt
includes all proceedings relating to the juror from the time of his notification to
attend at the term of court and prohibits him from improperly conversing with
a party to an action or special proceeding to be tried at that term of the court.
The fact that the case is on trial and has not been submitted to the jury does
not exclude it from this section of the Judiciary Law.

Accordingly, the respondent in a proceeding brought pursuant to section 753 of
the Judiciary Law to punish him for misconduct in willfully violating his
duties as a trial juror, is guilty of civil contempt of court and should be com-
mitted to the county jail for thirty days and, in addition, fined $250 and the
amount of the plaintiff's expenses, aggregating $104, as the result of the mis-
trial, where it appears that during the trial of an action in which the respond-
ent was sitting as a juror, he sought an interview with the plaintiff and improp-
erly demanded a sum of money to influence his vote.

CONTEMPT proceeding under section 753 of the Judiciary Law
to punish a trial juror for misconduct.

*Frank H. Innes*, for the plaintiff.

*John C. Burke, Jr.*, for the respondent.

STRONG, J. The proceeding is brought under section 753 of the
Judiciary Law to punish the respondent for misconduct in willfully
violating his duties as a trial juror. It is a private or civil con-
tempt proceeding instituted by moving papers and an order to
show cause, duly served on the respondent. Testimony has been
taken before the presiding justice of the court at the term at
which the alleged offense was committed and on this hearing the
respondent personally appeared and was also represented by counsel.
The petitioner, the aggrieved party, offered proof and each of the

---

* Affirmed, 208 App. Div. 856; application to appeal to the Court of Appeals
denied, 209 id. 830.

other jurors (eleven) were examined as to any conversations had with the respondent. The respondent was sworn and testified upon his own behalf and also called witnesses in his defense.

Section 753 of the Judiciary Law reads as follows:

" § 753. Contempts punishable civilly. A court of record has power to punish, by fine and imprisonment, or either, a neglect or violation of duty, or other misconduct, by which a right or remedy of a party to a civil action or special proceeding, pending in the court may be defeated, impaired, impeded, or prejudiced, in either of the following cases: * * *

" 6. A person duly notified to attend as a juror, at a term of the court, for improperly conversing with a party to an action or special proceeding, to be tried at that term, or with any other person, in relation to the merits of that action or special proceeding; or for receiving a communication from any person, in relation to the merits of such an action or special proceeding, without immediately disclosing the same to the court."

It is charged that the respondent, a juror, during the trial of the action and after the court had taken a recess for the night, sought out the plaintiff and offered to assist plaintiff in obtaining a verdict in his favor, if he were paid the sum of one hundred dollars. The testimony of the plaintiff, petitioner, the aggrieved party, is that a boy called on him at his house on the night of February fourth while the trial was pending, after the court had recessed for the night, and told plaintiff, petitioner, that the respondent, John Werra, a juror in the case, would like to see him that night. The plaintiff, petitioner, instead of harkening to the summons, communicated with his counsel and did not attempt to see the juror that night. On the way to court on the next morning, February 5, 1924, the plaintiff, petitioner, and his wife boarded a trolley car on which the respondent Werra was riding. The testimony of the plaintiff, petitioner is that it was during this ride that the respondent moved over and sat beside him and that after a few words, during which the unsuccessful outcome of the first trial was discussed, the respondent asked why plaintiff had not been to his house; that the respondent then said: " Well, if you fellows want to go it alone and independently, well go ahead, but it might turn out as it did last time;" that plaintiff said, " how much will this cost " and respondent answered, " a hundred;" that plaintiff said, " I haven't got a hundred dollars," and respondent answered, " To Hell, with that. Borrow it;" and further said, " you will get half of what you sue for anyway."

The respondent denies sending a boy to plaintiff's residence and his testimony is that it was plaintiff who called him over on the

trolley and said that he, plaintiff, would pay $100 or more for a favorable verdict. The testimony as to the conversation on the trolley as given by the two men relates to the same subject. In what lead up to it and as to which of them made the offer or demand, they differ. They both have certified to a conversation about a pair of shoes. The plaintiff testified that respondent said that " I can't do this all alone * * * I have got to promise these fellows a pair of shoes." The respondent's testimony is that he knew Bailey had been in the shoe business and said: " You know, Mr. Bailey, buying a juror is not the same as buying or selling a pair of shoes."

The wife of the petitioner sat with him on the trolley car. She was called as a witness, but testified that she did not overhear any of the conversation with the respondent. Her testimony is that she was too nervous and upset after what was done the night before. She testified that she had seen a boy on the evening before and had conversed with the attorney for the plaintiff on the telephone the night before. The conductor of the trolley car saw the respondent move over to and sit with the plaintiff, petitioner. He saw them talk and then saw the respondent change his seat. He did not see whether the plaintiff made a sign for the respondent to move over and sit by him.

On the morning of this same day the attorneys for both litigants in the case on trial appeared before the trial justice before the opening of court and were closeted with him in chambers for nearly an hour before the trial justice went into court and declared a mistrial. During this time the juror Werra, the respondent, was in his place in the jury box and made no effort to communicate with the court, or trial justice, nor had he communicated with the trial justice up to the time of the return of the order to show cause on February twenty-fifth. If the juror was approached or received a communication from any person in relation to the merits of the case on trial, as respondent has testified he was, it was his duty to immediately disclose the same to the court. The respondent explains his failure to report the incident to the court by saying that he did not desire to cause the petitioner trouble. He does not attempt to explain his failure to report the incident after the mistrial had been declared.

At the outset there is no evidence to warrant even as much as an inference that any one of the eleven jurors sitting on the jury with the respondent either made any improper suggestions or offers or acted in any manner contrary to that expected of a juryman. No shoes or hats were either demanded or promised to any of them. They are entirely exonerated. Neither they

nor the workings of the entire jury system are challenged in this proceeding. A jury system which has existed for ages and has stood the acid test of centuries needs no argument of defense. The fact that a search through text-books and reports since the colonial days fails to reveal a case parallel to this in the history of the state of New York indicates the dependence of our jury system and is a tribute to its effectiveness.

Section 753 of the Judiciary Law relates to civil contempt whereby the rights or remedies of a private suitor are affected. It is argued that this section does not cover the alleged offense, as it was not an action or special proceeding " to be tried at that term," as provided in subdivision 6 of the section. The fact that the case was on trial does not exclude it from the section. The section includes all proceedings relating to the juror from the time of his notification to attend at the term of court and prohibits him from improperly conversing with a party to an action or special proceeding to be tried at that term of the court. The general provision of section 753 reads " pending in the court." To argue that an action while on trial and before a final submission to the jury is not included within the provisions of this section would demand that ordinary words and phrases be given a different meaning than that of the generally accepted one. The respondent is not questioned for his acts in the jury room. The case had not been submitted to the jury at that time. *Matter of Cochran*, 237 N. Y. 336. He did not view the premises of an alleged crime. *People ex rel. Munsell* v. *Court of Oyer & Terminer*, 101 N. Y. 245. He is accused of demanding a bribe from the plaintiff during the trial of an action to be tried at a term of the court at which he was attending as a juror and in a case in which he was then sitting as a juror. The respondent when called as a juror was asked whether he knew the plaintiff and his answer was, " No." Whether this would be contempt I do not decide in view of *Matter of Cochran*, *supra*. Whether respondent sent his son or some other boy to the home of petitioner on the evening of February fourth, the testimony shows that after some one called at the house the plaintiff and his wife were in communication with plaintiff's counsel and it must be conceded that any conversation had on the trolley on the next day, February fifth, with the respondent was after petitioner had made some communication to his counsel.

I have gone into the testimony at some length as there is a disputed question of fact. After hearing the testimony of the witnesses, observing their conduct on the stand and reviewing the testimony I have come to the conclusion that the respondent, who has served as a juror for a period covering sixteen years, sought

the interview and that he improperly demanded a sum of money to influence his vote while serving as a juror.

The acts of the respondent and the mistrial which resulted defeated, impaired and prejudiced the rights of the plaintiff in the action. I find that the respondent, John Werra, is guilty of a civil contempt of court. The respondent, John Werra, will be committed to the county jail for thirty days. The plaintiff has incurred an expense of $100 for witness fees and $4 trial fee. The respondent will be fined the sum of $250 and the sum of $104, the amount of the plaintiff's expenses. Let order and warrant of commitment be presented on notice.

Ordered accordingly.