PABLO BIGIO RODRÍGUEZ, peticionario, *v.* CORTE DE DISTRITO DE SAN JUAN, HON. PABLO BERGA, JUEZ, demandada.

No. 959.—*Sometido:* Marzo 21, 1934. *Resuelto:* Abril 5, 1934.

---

* NOTA: Véase el prefacio.

R. *Martínez Nadal, F. Navarro Ortiz* y *L. Llorens Torres,* abogados del peticionario.

EL JUEZ ASOCIADO SEÑOR CÓRDOVA DÁVILA, emitió la opinión del tribunal.

Se solicita en este caso la expedición de un auto de *certiorari* para revisar las actuaciones de la Corte de Distrito de San Juan en un procedimiento de desacato incoado contra Pablo Bigio Rodríguez, quien sirvió de jurado en el juicio de la causa criminal seguida por el Pueblo de Puerto Rico contra Ramón Grau, por un delito de robo. Excepcionada perentoriamente la querella formulada por el fiscal contra el peticionario, la corte desestimó las excepciones perentorias,

basando su fallo en las razones expuestas en una laboriosa opinión.

En la solicitud se alega que el juicio contra Ramón Grau comenzó el 6 de febrero de 1934 y duró cuatro días, siendo disuelto el jurado el día 10 del mismo mes de febrero por no haber llegado a un acuerdo en el veredicto; que cinco días después, o sea el 15 de febrero de 1934, cuando dicha causa criminal ya había terminado con la disolución del jurado, esto es, cuando ya el caso no estaba pendiente ante la corte, el fiscal de la misma, Hon. Domingo Massari, radicó ante la expresada Corte de Distrito de San Juan una querella contra el ahora peticionario Pablo Bigio Rodríguez, imputándole la comisión de un delito de desacato por perjurio, consistente en que, al ser examinado sobre sus condiciones para servir el cargo de jurado, declaró falsamente que no tenía motivo alguno que le impidiera dar un veredicto imparcial, siendo tal declaración falsa, según alega la querella, porque el dicho jurado Pablo Bigio, posteriormente, durante las deliberaciones secretas del jurado, hizo manifestaciones a sus compañeros y entre ellos realizó actos demostrativos de que había jurado falsamente sobre su imparcialidad para actuar como jurado en dicha causa.

En la querella formulada por el Fiscal del distrito de San Juan contra el peticionario, se exponen los siguientes hechos:

1. Que el día 6 de febrero de 1934 comenzó en la Corte de Distrito de San Juan la vista del juicio por jurado de El Pueblo de Puerto Rico versus Ramón Grau, por un delito de robo cometido dentro del distrito judicial de San Juan y para dicha fecha fueron citados, de acuerdo con la ley, el número de jurados del cual había de seleccionarse el panel de doce jurados que debía conocer de y resolver el mencionado caso criminal.

2. Que el juicio duró cuatro días, en el curso de los cuales se presentó toda la evidencia del caso, consistente en declaraciones de testigos, documentos y prueba de objetos.

3. Que así mismo y antes de quedar constituído el jurado, se tomó juramento a todos los señores jurados para proceder a cualificarlos

y más tarde la corte tomó el juramento definitivo a los doce jurados que habían de oír la evidencia del caso para resolverlo de acuerdo con la prueba y con la ley.

4. Que entre los doce jurados que quedaron definitivamente juramentados y que oyeron la evidencia del caso, uno de ellos, Pablo Bigio, de Río Piedras, contra quien se dirige esta querella, al ser examinado bajo juramento sobre sus condiciones para servir como jurado en el caso, declaró que no tenía motivo alguno, en relación con el acusado o los abogados defensores, Lics. Martínez Nadal, Navarro Ortiz y Díaz Viera, que le impidiera rendir un veredicto imparcial y justo.

5. Que terminado el período de la prueba, los informes de los abogados y las instrucciones de la corte, se retiró el jurado a deliberar y su deliberación duró más de veinticuatro horas, y luego de haber transcurrido dicho lapso de tiempo, el presidente del jurado y otros jurados manifestaron a la corte que era absolutamente imposible llegar a un veredicto, en virtud de cuyas manifestaciones la corte tuvo que disolver el jurado, quedando el caso sin resolución.

6. Y el fiscal alega que el no haber podido llegar a un acuerdo el jurado se debió exclusivamente a la actitud asumida por el mencionado Pablo Bigio, quien con el deliberado propósito de obstruir la administración de justicia de modo ilegal, voluntaria y maliciosamente, y de manera corrupta contestando falsamente acerca de su imparcialidad para juzgar el caso, consiguió ser admitido a formar parte del jurado con el único fin de impedir que se rindiera contra dicho acusado un veredicto condenatorio. Y a fin de lograr su propósito realizó en el curso de las deliberaciones los actos siguientes:

(a) Manifestó durante las deliberaciones del jurado "que había que absolver al acusado de cualquier manera."

(b) Rehuyó y se negó a exponer razones y a oír argumentos.

(c) Se negó obstinadamente a discutir la evidencia en modo alguno.

(d) Manifestó que así estaría tres días y una semana y un mes, todo el tiempo que fuera necesario.

(e) Se separó y alejó de los demás jurados, sentado en una silla recostada de la pared, sin querer oír argumentos.

(f) Pretextó que de la única manera que condenaría al acusado, sería que el jurado condenara también a un testigo del caso, que no estaba acusado, y cuya conducta era absolutamente extraña a la misión judicial que debía realizar el jurado, de acuerdo con la ley, los hechos y las instrucciones de la corte.

(g) Se negó a que se solicitaran nuevas instrucciones de la corte.

(*h*) Rehusó aceptar indicaciones que se le hicieron de pedir a la corte la lectura de algún testimonio que le pudiera aclarar cualquier hecho.

(*i*) Expresó que "lo tenían que matar para que lo pudieran cambiar."

(*j*) Manifestó a algunos jurados que él debía la colocación que tenía en el Departamento del Interior al Lic. Navarro Ortiz, contra quien no podía ir, así como tampoco contra su representado, siendo dicho abogado uno de los abogados defensores del bufete Martínez Nadal y Navarro Ortiz, que allí y entonces intervenía en la defensa del acusado.

(*k*) Manifestó, cada vez que se le acercaba un jurado para tratar de argumentarle y razonarle, que él no quería discutir, que cuando todos se pusieran de acuerdo para absolver al acusado se lo dijeran.

7. Y alega el fiscal que al actuar de ese modo el referido Pablo Bigio declaró falsamente, ocultando deliberadamente a la corte el favor que debía a uno de los abogados de la defensa, lo cual podía haber sido razón bastante para recusarlo motivadamente, y así mismo contestó falsamente cuando expresó que no existía motivo que le impidiera dar un veredicto imparcial y justo. Y habiendo así contestado falsamente bajo juramento a las preguntas que se le hicieran en corte abierta sobre esos extremos esenciales, tal actitud y tales hechos los realizó el repetido Pablo Bigio con el propósito deliberado de obstruir la debida administración de justicia y en desacato y menosprecio del tribunal que había de juzgar al acusado Ramón Grau.

Negóse esta corte a expedir el auto de *certiorari* originalmente solicitado para revisar las actuaciones de la corte inferior, y ahora comparece nuevamente el peticionario presentando una enmienda a la solicitud, pidiendo que se reconsidere nuestra resolución y que se le dé la oportunidad de ser oído por conducto de sus abogados para argumentar sobre la procedencia de la expedición del auto.

La enmienda a la solicitud, que damos por admitida, contiene la siguiente alegación:

"Que la vista del Desacato por Perjurio a que se refiere la Petición original, en el presente recurso de Certiorari, estaba señalada por el Hon. Juez Pablo Berga para el día 27 de este mes, y ha sido aplazada para celebrarse el día 4 del entrante mes de abril; que el peticionario, quien es uno de los jurados en este Distrito de San Juan,

está actualmente formando parte del panel de jurados que desde hace más de una semana están en dicha Corte de Distrito para los juicios criminales que se están celebrando en el actual término ante dicha Corte; que cuantas veces ha sido llamado el peticionario Pablo Bigio, por haber salido en el sorteo que se hace en toda causa, ha sido recusado, a consecuencia del prejuicio que contra él ha levantado la querella del Fiscal y el proceso a que se refiere el presente Certiorari; y que, por tal motivo, dicho proceso, en el que la Corte de San Juan está actuando sin jurisdicción y en violación de la ley de procedimiento, está causando irreparables daños y angustias al peticionario; y éste es otro motivo por el cual alegamos que el recurso de apelación, que pudiera haber en el futuro, dada la especialidad de este caso, no resulta un remedio adecuado y rápido y eficaz para librar al peticionario de las injurias que está sufriendo con dicho proceso."

 En la moción de reconsideración se dice que hemos respondido a la petición original de *certiorari* con sólo tres palabras: "No ha lugar." Comentando nuestra negativa a expedir el auto, dice el peticionario por conducto de sus ilustrados abogados:

"No creemos que el motivo de dicha resolución sea algún tecnicismo procesal o la falta de algún requisito técnico, porque estamos seguros de que vuestro criterio no ha sido nunca propicio a desamparar los derechos substanciales posponiéndolos a los requisitos de la técnica legal. Nos parece que vuestra resolución es hija de una de estas dos actitudes científicas: o que entendéis que en este caso hay apelación y que la apelación puede ser un remedio adecuado y eficaz para el peticionario; o que juzgáis correcta y razonable y científica la resolución y opinión del Hon. Pablo Berga, acompañada como exhíbit F. de nuestra petición. En este último caso, deseamos manifestaros que nosotros también, mirándola desde nuestro más humilde punto de vista científico, hemos apreciado la labor jurídica del juez en dicha Resolución; pero la hemos estudiado profundamente y creemos tener armas poderosas para demostrar que dicha Resolución es errónea y que no sólo lesiona los derechos constitucionales del peticionario, sino que también es perjudicial para la administración de la justicia en Puerto Rico."

Nos negamos a expedir el auto solicitado después de haber examinado la solicitud, pesado sus argumentos y consultado la jurisprudencia citada por el peticionario y por el Juez

Berga en su opinión, complementándola con nuestra propia búsqueda y estudio de las cuestiones planteadas. No estamos obligados a emitir una opinión cada vez que se niega la expedición de un auto de *certiorari.* Es cosa sabida que los tribunales de justicia no siguen esta práctica y que son muy contados los casos en que la negativa de la corte viene acompañada de una opinión. Hemos seguido la práctica generalmente establecida, porque no consideramos necesario, a los fines de la justicia, explicar en todos los casos las razones que motivan nuestra negativa, porque carecemos de tiempo para engolfarnos en esta labor, dada la frecuencia con que se acude a este procedimiento extraordinario, y porque debemos ejercitar libremente nuestro criterio y emitir opinión únicamente cuando a nuestro juicio la naturaleza del caso lo requiera. No es éste un caso que por su naturaleza justifique nuestra intervención inmediata para interrumpir el curso ordinario de un procedimiento, dentro del cual puede establecerse en su día recurso de apelación si el fallo que se dicte por la corte inferior resulta adverso al querellado. No creemos que la resolución que se pretende revisar tienda a menoscabar los principios de la justicia ni que prive de ningún derecho al peticionario. En la vista de la causa podrá éste ejercitar sus derechos con toda amplitud, oponiéndose a la admisión de la evidencia que considere inadmisible, tomando excepciones y poniendo de relieve su inocencia, si en realidad no es culpable de los actos que se le imputan. Un jurado que ha cumplido con sus deberes y emitido su voto obedeciendo a los dictados de su conciencia, si se ve sometido a la prueba de responder a una acusación como la formulada contra el peticionario, no debe tener dificultades para disipar las sombras, alejar las dudas y remover las nubes que hayan podido proyectarse sobre su reputación, con motivo de los cargos de que ha sido objeto. No podemos convenir con los abogados del peticionario, por mucho respeto que su criterio nos merezca, que la resolución de la corte inferior perjudique la administración de la justicia en Puerto Rico. Nos damos

cuenta de las responsabilidades que asumimos y del respeto que deben merecernos los derechos de un individuo y de la sociedad en general. Es nuestro deber estimular la confianza en los tribunales y contribuir con nuestros esfuerzos a mantener la pureza en la justicia y la rectitud en su administración. En el cumplimiento de esta misión, para nosotros sagrada y respetable, esta corte pondrá en ejercicio toda su fuerza moral y toda la autoridad que la ley le concede. Si la corte inferior careciese de jurisdicción para actuar y su resolución tendiera a lesionar los derechos constitucionales del peticionario y a perjudicar la administración de justicia, no habríamos vacilado en expedir el auto solicitado. Hemos estudiado detenidamente los hechos relacionados en la querella, y las excepciones perentorias formuladas por el peticionario, y opinamos que el procedimiento incoado contra el mismo debe seguir su curso natural y ordinario hasta que sea resuelto en definitiva.

 En las excepciones perentorias a la querella se alega que los hechos expuestos en la ley no constituyen delito público, que no están previstos y penados por la ley para proveer un castigo sumario por delito de perjurio cometido en corte abierta y para otros fines, aprobada en 1911, y que la continuación de este proceso y de la práctica de prueba sobre el mismo, en la forma planteada por el fiscal, no puede efectuarse sin destruir la doctrina del secreto o inviolabilidad de las deliberaciones del jurado.

No basa la corte inferior su resolución en la ley de desacato por perjurio, de la cual dice que no cubre el delito imputado al querellado, sino en la ley definiendo el delito de desacato, aprobada en 1902, y enmendada en 1906, en el artículo 7 del Código de Enjuiciamiento Civil, y en la facultad inherente de las cortes de distrito para castigar los desacatos cometidos a su autoridad.

No es el perjurio el fundamento básico de la querella, como insiste en sostener el peticionario, sino su conducta deliberada, según los hechos alegados, de obstruir la adminis-

tración de justicia haciendo uso de un juramento falso y ocul·
tando hechos que debió revelar, para conseguir ser admitido
como jurado, con el único fin de impedir, en su carácter de
tal, que se rindiera un veredicto condenatorio contra el acu-
sado. La corte inferior desestimó las excepciones perento·
rias por entender que los hechos alegados en la querella atri·
buyen a Pablo Bigio Rodríguez una conducta desdeñosa, ten-
dente a obstruir la administración de justicia, y considerar
que estos hechos imputan al querellado un delito de desacato.
No está equivocado el tribunal *a quo*. Como hemos visto, en
la querella se alega que el jurado no llegó a un acuerdo de·
bido exclusivamente a la actitud asumida por Pablo Bigio,
quien, con el deliberado propósito de obstruir la administra-
ción de justicia de modo ilegal, voluntaria y maliciosamente,
y de manera corrupta, contestando falsamente acerca de su
imparcialidad para juzgar el caso, consiguió ser admitido a
formar parte del jurado, con el único fin de impedir que se
rindiera contra el acusado un veredicto condenatorio. Se
alega además que el referido Pablo Bigio declaró falsamente,
ocultando deliberadamente a la corte el favor que debía a
uno de los abogados de la defensa, y que asimismo contestó
falsamente cuando expresó que no existía motivo que le im-
pidiera dar un veredicto imparcial y justo. Consideramos
aplicable a este caso la doctrina sentada por el Tribunal Su-
premo de los Estados Unidos en *Clark* v. *United States*, 289
U. S. 1. En dicho caso la Sra. Genevieve A. Clark sirvió de
jurado en una causa criminal instituída contra William B.
Foshay y otros. La referida señora fué empleada de la firma
Foshay & Co., de la cual era miembro el acusado. Su esposo
era también íntimo amigo de dicho acusado. La señora de-
claró sin descubrir sus relaciones con la referida firma, que
su mente estaba libre de prejuicios y que sólo tendría en
cuenta la ley y la evidencia para dictar su veredicto. El
juicio duró ocho semanas. Durante la primera semana del
juicio la Sra. Clark hizo manifestaciones a varios de sus com-
pañeros en el sentido de que ella estimaba que Foshay era

una víctima de las circunstancias, que había ido a Nueva York en el otoño de 1929 a tomar $18,000,000 a préstamo, pero que a causa de la repentina depresión en el mercado tuvo que regresar sin un dólar. Preguntada por un jurado dónde había obtenido tal información que no estaba apoyada por la evidencia, respondió que la tomó de un periódico que ella había leído antes del juicio. Más tarde dicha señora expresó su descontento con el Gobierno por la forma en que había tratado a los soldados después de la guerra. Durante las deliberaciones del jurado, después que el caso fué sometido finalmente, dicha señora anunció que puesto que el fiscal no había podido convencerla de la culpabilidad del acusado, difícilmente podrían hacerlo los demás jurados. En ocasiones dicha señora colocaba sus manos sobre sus oídos cuando otros jurados trataban de razonarle, siendo inútil argumentarle, porque ella no estaba dispuesta a contestar. Manifestó dicha señora que un testigo del Gobierno había dado evidencia falsa en el Sur, tratando de que se declarara convicto a un hombre inocente. Esta información vino a ella en el curso de una conversación con su marido, que la había visto en el hotel, en la presencia del alguacil, mientras se celebraba el juicio. Después de haber estado una semana deliberando, el jurado fué disuelto por no haber llegado a un acuerdo. Los votos de once de ellos estuvieron siempre por convicción. El único voto por la absolución fué emitido por la Sra. Clark. Ésta fué procesada y condenada por desacato en la corte de distrito donde se celebró el juicio de la causa mientras sirvió de jurado. Esta sentencia fué confirmada por la Corte de Circuito de Apelaciones del Octavo Circuito y en última instancia por la Corte Suprema de los Estados Unidos en el caso anteriormente citado. Hablando a nombre de la corte el Juez ponente, Sr. Cardozo, se expresó en los siguientes términos:

" 'Una obstrucción al cumplimiento de un deber judicial resultante de un acto realizado en presencia de la corte es la característica sobre la cual debe descansar la facultad para castigar por des-

acato.' El Juez Presidente White, en Ex parte Hudgings, 249 U. S. 378, 383. La peticionaria no ha sido sentenciada por ocultación, aunque la ocultación ha sido probada. Ella no ha sido sentenciada por jurar falsamente, aunque se ha probado el falso juramento. A ella se le condena por haber hecho uso de un juramento falso y de ocultar la verdad, para lograr que se la aceptara como miembro del jurado y bajo el palio de esa relación obstruir el curso de la justicia. Existe una distinción que no debe ser ignorada entre el fraude cometido por un testigo y el fraude de un presunto jurado. Cuando un presunto jurado es aceptado como miembro del jurado, él forma parte de la corte y es un miembro de la misma. In re Savin, 131 U. S. 267; United States v. Dachis, 36 F. (2d) 601. El juez que examina a los presuntos jurados (voir dire) está ocupado en la organización de la corte. Si las respuestas que se dan a las preguntas hechas son voluntariamente evasivas o a sabiendas de que son inciertas, el presunto jurado, al ser aceptado, es un jurado de nombre solamente. Sus relaciones para con la corte y para con las partes está viciada desde su origen; es una mera simulación y una farsa. Lo que se trataba de obtener era la elección de un árbitro imparcial. Lo que se logró fué la intromisión de un defensor partidista. Si un pariente de uno de los litigantes logra entrar en la sala de deliberaciones con el disfraz de un jurado afable, el resultado no hubiese sido distinto. Desde sus comienzos el juicio estaba predestinado a ser una nulidad.

''Los libros hacen la pregunta de si perjurio equivale a desacato, y la contestan con claras distinciones. Se ha dicho que el perjurio cometido por un testigo no es suficiente cuando la obstrucción al poder judicial es tan sólo la inherente al error de declarar falsamente. Ex parte Hudgings, supra. Para ofensas de esa índole el remedio de acusación es apropiado y adecuado. Por otra parte, una obstrucción al poder judicial no dejará de constituir desacato aunque una de sus agravantes sea la comisión de perjurio. Cf. In re Ulmer, 208 Fed. 461; United States v. Appel, 211 Fed. 495; United States v. Karns, 27 F. (2d) 453; United States v. Dachis, 36 F. (2d) 601; Lang v. United States, 55 F. (2d) 922, 286 U. S. 523; United States v. McGovern, 60 F. (2d) 880. Debemos tener en cuenta todas las circunstancias y de éstas no es la menos importante la relación que hacia la corte tiene la persona acusada de desacato. El engaño cometido por un letrado puede ser castigado como desacato si tal engaño equivale a un abuso de las funciones de su cargo (Bowels v. United States, 50 F. (2d) 848, 851, United States v. Ford, 9 F. (2d) 990), y ello fuera de su calidad de punible si hubiese sido cometido

por cualquier otra persona. Un presunto jurado que preste juramento como miembro del jurado, se convierte, al igual que el letrado, en un funcionario de la corte y debe someterse a restricciones similares. La peticionaria arroja sombras sobre la situación al dividir su conducta en partes cual si se tratara de errores separados que debieran castigarse separadamente. Lo que se castiga ha sido mal concebido, a menos que se conciba como una unidad, o sea, el abuso de una relación oficial mediante la ocultación y el fraude. Algunos de sus actos, o ninguno de ellos, pueden ser castigados como delito. El resultado total es en lo que a su responsabilidad en el presente caso se refiere. Ella ha jugado con la corte de la cual formaba parte y se ha burlado de sus procedimientos. Esto constituye desacato, independientemente de lo demás que sea. Sinclair v. United States, 279 U. S. 749; In re Savin, 131 U. S. 267.''

La otra cuestión que plantea el peticionario es la que se relaciona con el secreto que debe prevalecer en las deliberaciones del jurado. En apoyo de que este secreto es absolutamente inviolable, cita el peticionario a los autores Jones y Wigmore, y el caso de *El Pueblo* v. *Reyes,* 6 D.P.R. 196. En el mismo caso de *Clark* v. *United States,* supra, la Corte Suprema de la nación expresa su criterio con respecto a la inviolabilidad del secreto, reconociendo que existen algunas excepciones de fundamental importancia. El Juez ponente, Sr. Cardozo, dice que la doctrina se desarrolla y el privilegio se expone ampliamente en los comentarios del tratadista señor Wigmore y añade que ha sido reconocida en cierto grado por otros autores de prestigio en materias de evidencia: Hughes, Jones, Chamberlayne; pero de un modo que ha sido confundido con algo muy diferente: la capacidad de los testigos para declarar en una impugnación de veredicto. Veamos lo que nos dice el eminente jurista sobre esta importantísima cuestión:

''La admisión de prueba respecto a la conducta de la peticionaria durante las deliberaciones del jurado, no constituyó una negativa o menoscabo de ningún privilegio legal.

''Los libros sugieren la doctrina de que las argumentaciones y votos de los miembros del jurado, los *media concludendi,* son secretos, y no pueden revelarse a menos que se renuncie al privilegio. Cuanto se dice sobre la materia en los casos resueltos constituye un

*dictum* más bien que una decisión. Véanse Woodward v. Leavitt, 107 Mass. 453, 460; cf. Matter of Cochran, 237 N.Y. 336, 340; 143 N.E. 212; People ex rel. Nunns v. County Court, 188 App. Div. (N.Y.) 424, 430; 176 N.Y.S. 858. Aun así los *dicta* son significativos, toda vez que llevan consigo las implicaciones de una tradición inmemorial. La doctrina se desarrolla y el privilegio se expone ampliamente en los comentarios de un erudito tratadista. Wigmore on Evidence, (2a ed.) tomo 5, 2546. Ha sido reconocida en cierto grado por otros autores de prestigio (Hughes, Evidence, p. 301; Jones, Commentaries on Evidence, 2da. ed., 2212; Chamberlayne, Evidence, tomo 5, 3707), pero lo han hecho en forma tal que la han confundido con algo muy distinto: la capacidad de un testigo para declarar cuando se impugne un veredicto. Lo que nos interesa de momento es el privilegio en sí. Más tarde habrá necesidad de acudir a la regla relativa a la impugnación del veredicto. En cuanto al origen del privilegio se nos hace referencia a las costumbres de antaño y, para su defensa, al orden público. La libertad en los debates sería restringida y la independencia de criterio reprimida si a los miembros del jurado se les hiciera estar bajo la impresión de que sus argumentaciones y votos se darían a conocer públicamente. La fuerza de estas consideraciones no debe ser nagada. Pero el reconocimiento de un privilegio no significa que carece de condiciones o excepciones. La política social que prevalecerá en muchas situaciones puede resultar fallida en otras de una política social diferente, compitiendo por la supremacía. Entonces incumbe a la corte mediar entre ellas, fijándoles, en lo posible, un valor adecuado a cada una y llamando en su ayuda a todas las distinciones y analogías que sirven de herramientas al proceso judicial. Esta función es tanto más esencial cuanto que el privilegio tiene su origen en una tradición inveterada, aunque vaga, y no se ha hecho tentativa alguna, ni en los tratados ni en las decisiones, de establecer sus linderos con precisión.

"Asumiendo que existe un privilegio que impide que impertinentemente salgan a la luz las argumentaciones y el voto de un miembro del jurado mientras delibera, creemos que el privilegio no es aplicable cuando la relación que le da vida ha sido iniciada o continuada fraudulentamente. Es posible que haya que hacer otras excepciones en situaciones que no están ahora ante nos. Bastará consignar la que decide el presente caso. El privilegio toma como postulado una relación genuina, creada y sostenida honradamente. Si no se cumple esa condición, si la relación es meramente un engaño y un pretexto, el miembro del jurado no puede invocar una relación asumida

fraudulentamente, como un manto o palio para ocultar la verdad. Con esto no queremos decir que la mera imputación de haberse actuado mal, sin más, será suficiente para que deje de existir el privilegio. Debe haber una suficiente demostración prima facie que satisfaga al juez de que debe hacerse la luz. Al producirse esta demostración, los debates y los votos habidos en el cuarto de deliberaciones son admisibles como prueba corroborativa, que suplemente y confirme el caso que sin ellos existiría. Asumamos, por ejemplo, un proceso por el delito de soborno. Asumamos que existe prueba, directa o circunstancial, de que se ha pagado dinero a un miembro del jurado en consideración a su voto. Si se aceptara la argumentación de la peticionaria, nos llevaría a resolver que el caso de El Pueblo debe ponerse en manos de los jueces de hecho sin prueba de que el voto ha sido consecuencia de soborno. Esto equivale a pagar un precio demasiado alto por la garantía que debe tener un miembro del jurado respecto a su serenidad mental. People ex rel. Nunns v. County Court, supra.

''Hemos acudido a los precedentes en busca de una analogía, y la búsqueda no ha sido en vano. Existe un privilegio que protege las comunicaciones entre abogado y cliente. El privilegio se esfuma si se abusa de la relación. Un cliente que consulta a un letrado para que éste le dé consejos que le sirvan para la perpetración de un fraude, no recibirá ayuda de la ley. Él debe permitir que se diga la verdad. Existen casos antiguos, y son aparentemente al efecto de que la mera imputación de ilegalidad, no sostenida por prueba alguna, romperá los lazos de las confidencias. Véanse e.g., Reynell v. Sprye, 10 Beav. 51, 54, 11 Beav. 618; In re Postlewaite, 35 Ch. D. 722; cf. Regina v. Bollivant (1900) 2 Q.B.D. 163, (1901) A.C. 196. Pero esta concepción del privilegio carece de fundamento en resoluciones posteriores. 'Es evidente que sería absurdo decir que podría eliminarse el privilegio, haciendo meramente la imputación de fraude.' O'Rourke v. Darbishire (1920), A. C. 581, 604. Para eliminar el privilegio debe existir 'algo que dé color a la imputación,' debe existir 'prueba prima facie de que tiene alguna base de hecho.' O'Rourke v. Darbishire, loc. Cit., supra; también las páginas 614, 622, 631, 633. Al presentarse esa evidencia desaparecerá la reserva. Véase también Regina v. Cox, (1884) 14 Q.B.D. 153, 157, 161, 175; cf. Bujac v. Wilson, 27 N. Mex. 112; 196 Pac. 513; In re Niday, 15 Idaho 559; 98 Pac. 845. La sentencia de la Casa de los Lores en O'Rourke v. Darbishire hace de la materia una exposición definitiva. Tampoco depende la pérdida del privilegio de que se demuestre la existencia de una conspiración al demostrarse que el cliente y el abo-

gado son igualmente culpables. El abogado puede ser inocente; sin embargo, el cliente culpable deberá permitir que la verdad salga a la luz. Regina v. Cox, supra; Matthews v. Hougland, 48 N. J. Eq. 455; 469; 21 Atl. 1054; State v. Faulkner, 175 Mo. 546, 593; 75 S. W. 116; Standard Fire Ins. Co. v. Smithhard, 183 Ky. 679, 684; 211 S. W. 441; State v. Kidd, 89 Iowa 54; 56 N. W. 263; cf. Bank of Utica v. Mersereau, 3 Barb. Ch. 528, 598; Covesey v. Tannahill, 1 Hill (N. Y.) 33, 41.

"Con la ayuda de esta analogía, podemos acudir a las costumbres sociales que compiten por la supremacía. Un privilegio que subsiste hasta que se abuse de la relación y que desaparece al demostrarse la existencia de un abuso a satisfacción de la corte, se ha hallado que es una técnica que labora para la protección de las comunicaciones entre abogado y cliente. ¿Existe suficiente motivo para creer que se le declarará inadecuado para la protección de un miembro del jurado? No hay duda de que tiene fundamento la necesidad de que la conducta observada en la sala de deliberaciones está exenta del temor de que la misma se dé a conocer. La necesidad de que esa conducta sea pura e inmaculada no es menor. Un jurado de integridad y de razonable firmeza no temerá decir lo que su mente siente si las confidencias habidas durante el debate no sirven de instrumento a la impertinencia o a la malicia. No debe esperar que se le proteja contra revelaciones de su conducta en caso de que haya prueba que arroje sombras sobre su honradez. La probabilidad de que de vez en cuando haya seres pusilánimes que den rienda suelta a sus temores y permitan que intervenga el poder de represión de éstos, es demasiado remota e incierta para que sirva de pauta a la justicia. Debe ceder a la imperiosa necesidad, tan fatal en nuestras costumbres, de preservar la pureza del juicio por jurado contra intromisiones de corrupción. Cf. Attoney General v. Pelletier, 240 Mass. 264; 134 N. E. 407; People ex rel. Hirschberg v. Board of Supervisors, 251 N. Y. 156, 170; 167 N. E. 204; State v. Campbell, 73 Kan. 688; 85 Pac. 784."

La vigorosa argumentación del Juez Cardozo demuestra que hay un principio fundamental y supremo, al cual están supeditados todos los demás, y es la pureza en las actuaciones judiciales para asegurar la realización de la justicia. El secreto en las deliberaciones del jurado es una costumbre tradicional, establecida como una cuestión de interés público, para que los jueces de hecho actúen con libertad de acción, y

expresen sus argumentos y emitan sus votos libremente, sin sentirse cohibidos por el temor a la publicidad. La finalidad que se persigue es la justicia; el secreto es un medio que facilita su realización. Esta reserva debe desaparecer cuando no responda a sus fines, y sea necesario, para la protección de esos mismos fines, rasgar el velo y averiguar la verdad. Cuando la finalidad está en peligro, la sociedad, representada por el estado, debe utilizar sus fuerzas para salvarla del naufragio. Si se demuestra prima facie que en el recinto donde se reúnen los jueces de hecho para deliberar ha ocurrido alguna anormalidad que afecte seriamente la realización de la justicia, lo cual no es imposible dentro de la imperfección humana, el privilegio del secreto debe ceder ante una cuestión vital de interés público, a fin de que pueda llegarse al esclarecimiento de la verdad. La justicia no reconoce barreras. No hay campo vedado al ejercicio de su misión reparadora. Su radio de acción es ilimitado y sus brazos se extienden a todos los sitios donde se desarrollan las actividades humanas. Si la demostración prima facie se convierte en convicvicción, entonces el castigo del culpable es también un medio para mantener la pureza en la justicia y facilitar su administración, ya que ejerce una influencia saludable y hace saber públicamente que no hay impunidad para el fraude y la corrupción, cualquiera que sea el sitio en que se manifiesten. El mantenimiento de estos principios no puede infundir temores a ningún jurado, por apocado de espíritu que sea. El hombre íntegro y honrado no tiene nada que temer. El secreto de las deliberaciones no llegará a ser violado, cuando los jurados han cumplido con sus deberes, porque no se producirá ningún principio de prueba que justifique la revelación.

La querella formulada contra Pablo Bigio Rodríguez contiene hechos bastantes para imputar un delito de desacato. Si en este caso puede producirse o no evidencia que tienda a descubrir hechos ocurridos durante las deliberaciones del jurado, es una cuestión a decidir por la corte inferior cuando

se abra el juicio a prueba. Entonces es que el juzgador debe decidir si ha habido o no una suficiente demostración primá facie que satisfaga su conciencia y justifique que debe hacerse la luz. El hecho de que los testigos citados para la vista del desacato sean los otros jurados que intervinieron en el caso de El Pueblo contra Ramón Grau no quiere decir que no pueda producirse, aun con estos mismos testigos, la demostración (*showing*) de un caso prima facie suficiente para satisfacer al juzgador de que debe romperse el sello del secreto y admitirse testimonio corroborativo.

*No ha lugar a la reconsideración solicitada.*