THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* JOHN W. DIEFENDORF, Appellant.

First Department, March 3, 1953.

*Menahem Stim* of counsel (*Albert Felix* with him on the brief; *Curran & Stim,* attorneys), for appellant.

*Harold Roland Shapiro* of counsel (*Charles W. Manning* with him on the brief; *Frank S. Hogan, District Attorney*), for respondent.

FOSTER, J. Appeal from an order and mandate of commitment of the Court of General Sessions, adjudging appellant to be in criminal contempt of court for willful disobedience of a lawful mandate of the court.

Appellant was a juror on the trial of a criminal case entitled *People* v. *Engel.* The latter was charged with conspiracy to defraud the board of education of the city of New York in the purchase of paints and other supplies. The trial began on April 7, 1952, with the selection of a jury, after which it recessed until April 14, 1952, when evidence was presented. The case was submitted to the jury on April 25, 1952. After the jury had deliberated about nine hours a mistrial was declared with the consent of all parties. From the record before us on this appeal it appears that on the first vote the jury stood ten to two for conviction; thereafter the jury was deadlocked eleven to one for conviction, with appellant as the sole holdout.

The People moved to punish appellant for criminal contempt. This application was supported by the affidavits of two jurors, and a hearing was held before the trial court. The two jurors testified in substance that, prior to the submission of the case, appellant stated several times that Engel was a " little man " and that the " big men " were not on trial; that he was going to give the defendant a " fair shake "; and no one was going to change his mind on that score. Both jurors testified that appellant said the Trial Judge was talking too much and was one-sided. They also said that appellant characterized obscenely some of the witnesses for the prosecution. Both of these witnesses conceded however that appellant did not otherwise indicate whether he was for conviction or acquittal.

Evidence was offered as to what took place in the jury room after the case was submitted, particularly as to appellant's attitude. He was pictured as recalcitrant and unamenable to discussion or reason, and that it was said that he stated in substance that he would not convict anybody on the evidence presented. This line of testimony was offered and received to show that appellant had made up his mind before he entered the jury room.

Appellant admitted that he conversed with the two other jurors during recesses; that he said Engel was a " little fellow " and he was going to be for the " little fellow " but denied that he had a predetermined opinion as to the merits of the case. He explained that his sympathies were for the little man, and that was all he meant. He denied that while in the jury room he continuously read a newspaper and refused to discuss the

case. His attitude was that the People had failed to prove a conspiracy or intent to defraud. He was questioned closely as to whether he was acquainted with a witness who apparently lived at the New York Athletic Club where appellant resided. The relevancy of this line of questioning to the matter at hand did not appear.

The trial court found appellant guilty of criminal contempt by reason of his deliberate and willful disobedience of the court's admonition not to discuss the case with his fellow jurors until the case was finally submitted (Code Crim. Pro., § 415; Judiciary Law, § 750, subd. A, par. 3).

Undoubtedly the admonition by the trial court to the jury not to discuss the case before it was finally submitted was a lawful mandate. A casual disobedience of such mandate would not ordinarily be considered as a criminal contempt (*People* v. *Higgins,* 172 Misc. 613, 619). The trial court however has found that appellant's remarks were not casual, and constituted a willful disregard of the admonition. With this finding, made by the trier of the facts who saw and heard the witnesses, we would not be disposed to interfere if the testimony had been limited to what took place outside of the jury room.

Appellant could not be punished for his attitude in the jury room as to any proposed verdict (Civil Rights Law, § 14; *Matter of Cochran,* 237 N. Y. 336). If his conduct there was corrupt he could only be prosecuted by indictment, in which event he would of course be entitled to a trial by jury. The examination as to appellant's attitude in the jury room could only have been for the purpose of establishing that he prejudged the case and was a holdout from the beginning. In other words, that he violated the court's admonition to keep an open mind. The trial court recognized this and said, both in its commitment and opinion, that while it believed appellant willfully violated its mandate to keep an open mind it was not punishing him for such a violation. We would go further and say that appellant could not be questioned as to his attitude in the jury room towards a verdict for the purpose of relating the same to a charge of contempt. Public policy as exemplified by the statute forbids such an inquiry. Otherwise every holdout on a jury might be subjected to the hazard of a contempt proceeding. The case of *People ex rel. Nunns* v. *County Court* (188 App. Div. 424) decided nothing to the contrary, and the facts were very substantially different. On the *voir dire* examination there a juror said he was not acquainted with the defendants. Later in the jury room he said he was acquainted with them. By a

closely divided vote the appellate court held it was proper to prove by other jurors what he said in the jury room as to his acquaintance with defendants. The proceeding in no way related to the verdict, as the majority opinion pointed out. Hence the effect of the decision should be strictly limited to the facts of that case.

Here the trial court had before it an issue of fact as to whether appellant had willfully violated the admonition of the court not to discuss the case before it was finally submitted. Appellant should have been judged solely on the basis of what took place outside of the jury room. We find it difficult to escape the conclusion that he was not so judged and that his attitude in the jury room weighed heavily against him. The emphasis placed upon his conduct there by the trial court, both in its opinion and mandate of commitment, rather confirms this view. Hence we reach the conclusion that the violation of appellant's civil rights is so inextricably interwoven with the adjudication of contempt that the latter cannot stand.

A suggestion is made by the People that perhaps an order of the character involved here is not appealable. There has been some confusion in the past as to the proper method of review but we regard it as settled practice now that an order of criminal contempt of the character here involved is appealable (Civ. Prac. Act, § 1285, subd. 2; *Matter of Grand Jury, Co. of Kings* [*Reardon*], 278 App. Div. 206).

The mandate of commitment should be reversed, the proceeding dismissed and appellant discharged.

PECK, P. J., CALLAHAN, BREITEL and BERGAN, JJ., concur.

Order unanimously reversed, the proceeding dismissed and the appellant discharged. [See *post,* p. 865.]